**SAN MIGUEL COUNTY BOARD OF EQUALIZATION and Board of Assessment Appeals of the State of Colorado, Petitioners,**

v.

**TELLURIDE COMPANY, Respondent,**

and

**Mary E. Huddleston, Property Tax Administrator, State of Colorado, Intervenor.**

No. 96SC462.

Supreme Court of Colorado, En Banc.

Oct. 27, 1997.

Rehearing Denied Nov. 17, 1997.

Steven J. Zwick, San Miguel County Attorney, Richard F. Mutzebaugh, Special Assistant County Attorney, Telluride, for Petitioner San Miguel County Board of Equalization.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney

General, Richard Á. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, State Services Section, Mark W. Gerganoff, Assistant Attorney General, State Services Section, Denver, for Petitioner Board of Assessment Appeals of the State of Colorado.

Brega & Winters P.C., Ronald S. Loser, Brian A. Magoon, Denver, for Respondent Telluride Company.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, State Services Section, Denver, for Intervenor Mary E. Huddleston, Property Tax Administrator.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *Telluride Co. v. San Miguel County Board of Equalization*, 928 P.2d 1358 (Colo.App.1996), to determine whether an assessor may raise a property valuation after a taxpayer has filed a protest challenging the original valuation of the subject property.[1] The court of appeals held that the assessor did not possess this authority and reversed an order of the Board of Assessment Appeals (BAA) which substan-

tially affirmed the assessor's revised valuation of property owned by the Telluride Company (Telco). We reverse and remand with directions.

## I.

Telco owns twenty-four parcels of noncontiguous land totaling approximately 800 acres in San Miguel County as part of Telluride Mountain Village. This land is designated as active and passive open space and includes ski trails providing ski-in/ski-out access to residential lots, an eighteen-hole golf course, an equestrian center, restaurants, employee and low-income housing, and various maintenance facilities.[2] In 1993, Telco's open space land was assigned a valuation of $35,000 per acre by the San Miguel County Assessor (the assessor). Telco protested this assessment pursuant to section 39–5–122(2), 11 C.R.S. (1997), but the protest was denied by both the assessor and County Board of Equalization (CBOE).[3] Telco then appealed to the BAA. On June 13, 1994, the BAA determined that the 1993 valuation of Telco's open space land was excessive and lowered the valuation to $17,500 per acre. Telco did not appeal this determination.

In May of 1994, while the protest on the 1993 valuation was pending, the assessor mailed Telco a notice of valuation for the 1994 tax year which valued the active and passive open space land at $345 per acre.[4]

---

1. We granted certiorari on the following issue:
   Whether a taxpayer's protest of a valuation set by the assessor authorizes the assessor, and thus the County Board of Equalization (CBOE), and the Board of Assessment Appeals (BAA), to raise, lower, or maintain the assessor's original valuation where there is new evidence presented at a *de novo* hearing before the assessor, the CBOE or the BAA, or if clerical error is shown.

2. The San Miguel County Land Use Code categorizes open space as either active or passive open space. Active open space refers to open land used for outdoor recreation and the facilities necessary to support recreational activities. Passive open space is land that, to the greatest extent possible, will remain in its natural, undisturbed state. In January of 1994, approximately eighty-one percent of the open space property at issue here was designated as active open space while approximately nineteen percent was designated as passive open space.

3. Aggrieved taxpayers are provided with multiple levels of review to challenge valuations assigned by the assessor. This process begins with a protest filed with the assessor. *See* § 39–5–122(2), 11 C.R.S. (1997). Once the assessor denies the protest in writing, the taxpayer may appeal to the CBOE. *See* § 39–5–122(3), 11 C.R.S. (1997). Following the CBOE's order, the taxpayer may elect to appeal the valuation to the BAA or the district court where the property is situated, or submit the case to binding arbitration. *See* § 39–8–108(1), 11 C.R.S. (1997). Appeals before the BAA and the district court are subject to judicial review in the court of appeals. *See* § 39–8–108(2)–(3), 11 C.R.S. (1997).

4. At the BAA hearing, an appraiser for the assessor's office testified that this valuation was erroneous.

Telco protested this valuation despite the fact that it was substantially lower than the 1993 valuation. On June 27, 1994, the assessor mailed Telco a notice of determination which raised the 1994 valuation for active and passive open space property to $17,500 per acre. This change reflected the assessor's belief that because 1994 was the second year in the assessment cycle, the valuation should reflect the BAA's determination regarding the 1993 assessment.[5] Telco appealed this changed valuation to the CBOE, which subsequently affirmed the assessor's determination.

Telco again appealed to the BAA. The BAA affirmed the $17,500 per acre valuation of Telco's active open space property, but reversed the valuation of the passive open space property. The BAA determined that the assessor had incorrectly valued Telco's passive open space property at $17,500 per acre because this property remained in its natural state. It ordered the CBOE to reduce the valuation of Telco's passive open space property to $345 per acre, which mirrored valuations for similar open space property in the county. The BAA's order reduced the overall valuation of Telco's open space property from $14,108,420 to $11,346,545.

Telco appealed to the court of appeals, claiming that the assessor is prohibited from raising a property's valuation during the protest procedure. The court of appeals agreed and held that section 39–5–122(2) "does not authorize an assessor to raise the valuation of a taxpayer's property during the protest period." *Telluride Co.*, 928 P.2d at 1362. Consequently, the court of appeals reversed the BAA's affirmance of the higher, June 1994, valuation on active open space, and remanded with directions to reinstate the May 1994 valuation of Telco's active open space property at $345 per acre.

---

**5.** Section 39–1–103(15), 11 C.R.S. (1997), provides that "the assessing officer shall consider the actual value of any taxable property for the first year of a reassessment cycle ... to be the actual value of such taxable property for the second year of a reassessment cycle." Telco disputes the assessor's claim that 1994 is the second year in the assessment cycle and argues that a 1993 land exchange with the United States Forest Service profoundly altered the

## II.

■ Article X, section 3, of the Colorado Constitution establishes a framework for the uniform taxation of real and personal property situated in Colorado. *See Arapahoe County Bd. of Equalization v. Podoll*, 935 P.2d 14, 16 (Colo.1997). Article X, section 3(1)(a), provides in part:

> *The actual value of all real and personal property not exempt from taxation under this article shall be determined* under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property.... Valuations for assessment shall be based on appraisals by assessing officers *to determine the actual value of property* in accordance with provisions of law....

(Emphasis added.) Additionally, section 39–1–103(5)(a), 11 C.R.S. (1997), provides that "[a]ll real and personal property shall be appraised and the actual value thereof for property tax purposes determined by the assessor of the county wherein such property is located."[6] As these authorities suggest, actual value is the guiding principle for the taxation of real property in Colorado. *See Podoll*, 935 P.2d at 16.

Section 39–5–122(2) sets forth the mechanism by which taxpayers may challenge the actual values assigned to their property. Section 39–5–122(2) provides in pertinent part:

> If any person is of the opinion that his property has been valued too high ... he may appear before the assessor and object.... *If the assessor finds any valuation to be erroneous or to be otherwise improper, he shall correct such error,* but if he declines to change any valuation

composition of the subject property. We decline to address whether 1993 serves as the base assessment year due to the limited scope of our certiorari review.

**6.** Section 39–1–103(5)(a) was amended in 1996. However, the amendment concerned language apart from the language quoted here. *See* ch. 151, sec. 1, 1996 Colo. Sess. Laws 718.

which he has determined, he shall state his reasons in writing . . . .

(Emphasis added.) The court of appeals determined that the language of section 39–5–122(2) is ambiguous regarding whether the assessor is authorized to raise a valuation once a protest to that valuation has been filed. We disagree.

In construing a statute, courts must look to the language of the statute, giving effect to each word and phrase using commonly accepted meanings. *See Regional Transp. Dist. v. Lopez*, 916 P.2d 1187, 1190 (Colo.1996). If statutory language is ambiguous, a court must construe the statute according to the legislative intent underlying the statute. *See Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1111 (Colo.1990). However, if the statutory language is unambiguous, a court need not resort to interpretive rules of statutory construction. *See PDM Molding, Inc. v. Stanberg*, 898 P.2d 542, 545 (Colo.1995).

Section 39–5–122(2) provides that "[i]f the assessor finds any valuation to be erroneous or to be otherwise improper, he shall correct such error." The plain meaning of section 39–5–122(2) is unambiguous. Section 39–5–122(2) requires the assessor to correct "*any* valuation" that is "erroneous" or "otherwise improper." Although section 39–5–122(2) does not expressly authorize the assessor to raise a protested valuation, this power is implicit in the assessor's authority to correct "any" erroneous valuation. This interpretation is consistent with the broad correction powers given to both the assessor and the CBOE by other statutes within our system of property taxation. *See* § 39–5–125(2), 11 C.R.S. (1997) (assessor has the power to correct errors in valuation "at any time" prior to the time the tax warrant is delivered to the county treasurer); § 39–8–102(1), 11 C.R.S. (1997) (CBOE shall correct any errors made by the assessor); Colo. Const. art. X, § 15(1)(a); *Gilpin County Bd. of Equalization v. Russell*, 941 P.2d 257, 262 (Colo.1997) (CBOE shall raise, lower, adjust, and equalize valuations whenever "justice and right so require").

Additionally, section 39–8–108(5)(a), 11 C.R.S. (1997), provides that in any appeal

following a CBOE decision, "[t]he valuations shall not be adjusted to a value higher than the valuation set by the [CBOE]." The General Assembly has therefore determined that once the CBOE has ruled on a valuation, that valuation cannot be raised in a subsequent proceeding. We refuse to limit the assessor's broad correction authority without express statutory language to that effect because the General Assembly has already defined a point in the protest procedure where valuations may not be raised. *See Lunsford v. Western States Life Ins.*, 908 P.2d 79, 84 (Colo.1995) (explaining that when the legislature speaks with exactitude, the inclusion or specification of a particular set of conditions necessarily excludes others).

The assessors manual prepared by the Property Tax Administrator supports our interpretation of section 39–5–122(2) and addresses the subject of raising a valuation during the protest procedure as follows:

> The assessor shall correct erroneous or improper valuations. § 39–5–122(2), C.R.S. Corrections that raise or lower the valuation may be made during [the] protest period. By filing a protest, the taxpayer opens the door to all corrections. The taxpayer, as a matter of due process, always has the right to continue the appeal process until remedies are exhausted.

State Property Tax Administrator, Assessors Reference Library, Vol. 2, § V at 5.4 (1995); *see also Huddleston v. Grand County Bd. of Equalization*, 913 P.2d 15, 18 (Colo.1996) (holding that manuals are binding on all Colorado county assessors).

We agree with the Property Tax Administrator that requesting the assessor to scrutinize a valuation in the protest process "opens the door" to the possibility that the property in question is undervalued. Raising the protesting taxpayer's valuation does not punish the taxpayer for filing the protest. Rather, the corrected valuation is intended to reflect the property's actual value. If the taxpayer believes the assessor has raised the valuation in retaliation for filing a protest, multiple levels of appeal protect the taxpayer's rights while ensuring that property is assessed according to its actual value.

In this case, the valuation being protested was exceedingly low in comparison with prior valuations for substantially the same property. Telco's motivations for protesting such a low valuation have not been brought out in the proceedings below.[7] However, we note that, if it were allowed to stand, the court of appeals' holding would create an incentive for taxpayers to protest seemingly low valuations as a means of insulating the low valuation from the assessor's correction authority. Allowing taxpayers to capitalize on low or erroneous valuations in this manner contravenes the purpose of the protest procedure which provides recourse for taxpayers who believe their property valuations are too high. *See* § 39–5–122(2). More importantly, insulating low valuations from the assessor's correction authority violates the Article X, section 3(1)(a) requirement that all property must be assessed according to its actual value.

The General Assembly has authorized the assessor to raise valuations that fail to reflect a property's actual value regardless of when the error in valuation is discovered. *See* § 39–5–125(2) (providing that errors in assessment role may be corrected by the assessor at any time before the tax warrant is delivered to the treasurer); § 39–5–122(2) (providing that "[i]f the assessor finds any valuation to be erroneous or to be otherwise improper, he shall correct such error"). This broad authority ensures that real property in Colorado is assessed according to its actual value. We agree with the court of appeals that the protest procedure serves as the taxpayer's remedy for correcting an excessive valuation. However, our Constitution and statutes do not give taxpayers the right to secure valuations below actual value.

### III.

We hold that section 39–5–122(2) is unambiguous and authorizes the assessor to raise valuations during the protest procedure. Be-

cause the court of appeals determined that the assessor improperly raised the valuation of Telco's active open space property during the protest procedure, it did not consider whether the property was correctly valued. Therefore, we reverse the judgment of the court of appeals and remand for a determination of whether Telco's active open space property was correctly valued for the 1994 tax year.

---

7. Telco originally protested the assessor's $345 per acre valuation of its active and passive open space property. However, after the assessor changed the valuation to $17,500 per acre, Telco apparently sought a valuation closer to the original $345 per acre figure. Telco's brief states that the $345 per acre valuation "is readily understandable." Similarly, Telco presented no evidence at the BAA hearing that the $345 per acre valuation was too high. In fact, Telco's appraisers valued the open space property between $1,000 and $2,000 per acre. Additionally, one of Telco's appraisers testified that $345 per acre was "on the lower end."