CITY AND COUNTY OF DENVER, COL-
ORADO, a municipal corporation; and
Board of Equalization of the City and
County of Denver, Petitioners,

v.

BOARD OF ASSESSMENT APPEALS OF
the STATE OF COLORADO and Con-
stellation Properties, Respondents.

CITY AND COUNTY OF DENVER, COL-
ORADO, a municipal corporation; and
Board of Equalization of the City and
County of Denver, Petitioners,

v.

BOARD OF ASSESSMENT APPEALS OF
the STATE OF COLORADO and Teach-
ers Insurance Annuity Association of
America, Respondents.

ARAPAHOE COUNTY BOARD OF
EQUALIZATION, Petitioner,

v.

BOARD OF ASSESSMENT APPEALS OF
the STATE OF COLORADO and the
Writer Corporation, Respondents.

No. 96SC785.

Supreme Court of Colorado,
En Banc.

Nov. 10, 1997.

Rehearing Denied Dec. 2, 1997.

Daniel E. Muse, City Attorney, Alice J. Major, Assistant City Attorney, Denver, for Petitioner City and County of Denver.

Kathryn L. Schroeder, Arapahoe County Attorney, Richard F. Mutzebaugh, Special Assistant County Attorney, Littleton, for Petitioner Arapahoe County Board of Equalization.

Gale A. Norton, Attorney General, Martha Allbright Phillips, Chief Deputy Attorney General, Richard Westfall, Solicitor General, Paul Farley, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Mark W. Gerganoff, Assistant Attorney General, Denver, for Respondent Board of Assessment Appeals.

Brega & Winters, P.C., Ronald S. Loser, Brian A. Magoon, Denver, for Respondents Constellation Properties and Teachers Insurance Annuity Association of America.

Susan R. Fox, Denver, for Amicus Curiae Colorado State Board of Appraisers.

Justice HOBBS delivered the Opinion of the Court.

 We exercised our jurisdiction under C.A.R. 50 [1] to consider whether the Board of Assessment Appeals (BAA) erred in allowing persons to act as "appraisers" or "expert witnesses" and present testimony in property valuation proceedings under contingent fee agreements, contrary to section 12–61–712(1)(b), 5B C.R.S. (1991 & 1996 Supp.). In the three cases before us, two from the City and County of Denver and one from Arapahoe County (the Counties), the persons who testified in the BAA proceedings were salaried employees of appraisal firms that had executed contingent fee agreements with taxpayer clients. In each case, the fee to be paid depended upon the firm's assigned appraiser obtaining an outcome favorable to the firm's taxpayer client. We conclude that the appraiser appearances were unlawful and the BAA should not have allowed them. We reverse the agency actions, vacate the BAA determinations establishing the property valuations, and remand the three cases to the BAA for new proceedings consistent with this opinion.

## I.

The taxpayers in the three cases are Constellation Properties (Constellation), Teach-

---

1. C.A.R. 50 provides that we may accept and review a case before judgment is entered by the court of appeals.

ers Insurance Annuity Association of America (Teachers), and The Writer Corporation (Writer). Each of the taxpayers protested assessor determinations to their County Boards of Equalization (CBOE) and then appealed to the BAA, in accordance with section 39-5-122(3), 11 C.R.S. (1997). Each taxpaying entity hired an appraisal firm for the purpose of having one of its appraisers appear before the BAA.

Patrick Sullivan (Sullivan) of Marvin F. Poer & Company appeared for Constellation and Teachers in two of the proceedings. Todd J. Stevens (Stevens) of Stevens & Associates Cost Reduction Specialists appeared on behalf of Writer in the third. In each instance, the appraisal firm executed a contingent fee agreement with the taxpayer client. The fee to be paid was to be a percentage of the tax savings realized from the proceedings.

The agreement which procured Sullivan's appearance provided that the fee for appraisal services would be "[t]hirty percent (30%) of the 1995 tax savings. However, it is agreed that the fee shall not exceed seven thousand five hundred dollars ($7,500.00)." Stevens testified that the contract with his company provided for a fee of forty percent of the tax savings.

In each case, it is clear that the persons who testified on behalf of the taxpayers were acting as appraisers and expert witnesses. In the Constellation and Teachers cases, Sullivan issued appraisal reports to each of the taxpayers, which formed the basis of the appeal to the BAA. During the appeal proceedings in both cases, Sullivan was recognized by the BAA as an expert to give an opinion of value on the properties at issue. Likewise, Stevens issued an appraisal opinion for Writer, which served as the basis for the taxpayer appeal to the BAA. The BAA accepted Stevens as an expert and allowed him to testify concerning his appraisal opinion.

The Counties objected to the appraiser appearances as unlawful under section 12–61–712(1)(b), 5B C.R.S. (1991 & 1996 Supp.). Pursuant to the 1996 amendments, sections 12–61–712(1)(a) and (b) provided that:

(1) *It is unlawful for any person to:*

(a) Violate any provision of this part 7, or on and after July 1, 1996, to perform a real estate appraisal in conjunction with a debt instrument that is federally guaranteed or in the federal secondary market and regulated pursuant to title 12, U.S.C., without first having obtained a registration, license, or certificate from the board pursuant to this part 7.

(b) *Act as an appraiser or expert witness and receive a contingency fee; except that a person may act as an agent and receive a contingency fee if such person is not involved as an appraiser or expert witness in the same case.*

(Emphasis added.)

During the hearing in the Teachers' case, the first of the three to be heard, the BAA acknowledged that it was

probably as perplexed about this law as everybody else is, and I don't think there's any clear-cut way for the Board to rule yet. We have discussed this with our attorney and we'll go forward with the hearing. If we're wrong, I'm sure somebody down the road is going to tell us we're wrong.

By the time of the Writer case, the BAA had concluded that the statutory provision—in light of the language of paragraph (1)(a) quoted above—applied only to cases involving federal loans and transactions and, therefore, not to these cases.[2]

As a result of the three proceedings before the BAA, each of the taxpayers realized a substantial benefit from having brought an appeal and having an appraiser testify on its behalf. The resulting BAA valuations fell between the values presented by the government appraisers and the values presented by the taxpayers' appraisers.[3]

---

2. The BAA came to a different conclusion on March 13, 1997. In that case, the BAA told the expert witness there that he could not "work on a contingency basis and issue an opinion of value" because of HB 96–1080. *Sirpolaidis v. Den-*

*ver County Board of Equalization*, Docket No. 30959 (BAA Mar. 13, 1997).

3. In the Constellation case, the BAA lowered the property's actual value by $640,956 or 13% of the value assigned by the Denver Assessor's of-

## II.

We determine that the appraiser expert appearances in these proceedings before the BAA were unlawful under the 1996 provisions of section 12–61–712(1)(b) because payment of the fee depended upon the outcome of the proceedings.

### A.

#### Statutory History of Section 12–61–712

 Actual value is the guiding principle for the taxation of real property in Colorado. *See San Miguel County Bd. of Equalization v. Telluride Co.*, 947 P.2d 1381, 1383 (Colo.1997). Upon protest of an assessor's valuation, the CBOE shall correct any errors which the assessor may have made. *Id.* at 1384; *see also Gilpin County Bd. of Equalization v. Russell*, 941 P.2d 257, 262 (Colo. 1997) (CBOE shall raise, lower, adjust, and equalize valuations whenever "justice and right so require"). Under section 39–8–108(5)(a), 11 C.R.S. (1997), the valuations "shall not be adjusted to a value higher than the valuation set" by the CBOE on appeal to the BAA or district court.

Because the property's actual value is the subject matter of tax protest and appeal proceedings, appraisers often appear before the CBOE or BAA on behalf of taxpayer clients who seek a reduction. Appraisers are licensed by the Board of Real Estate Appraisers (Board). The Board consists of seven members appointed by the Governor with the consent of the senate. *See* § 12–61–703. The Board is empowered to issue, deny, or refuse to renew an appraiser's registration, license, or certificate, *see* § 12–61–704(1)(e), and may take disciplinary action for violation of the statutes and regulations governing appraisers and their work, *see* § 12–61–704(1)(f). As a result of the 1996 amendments, registration, licensure, or certification by the Board is now required only for appraisers who perform real estate appraisals in conjunction with a federal transaction. *See* § 12–61–712(1)(a); § 12–61–706(1); ch. 232, sec. 5, 9, § 12–61–706, 712, 1996 Colo. Sess. Laws 1188, 1192–96.

Under section 12–61–710(1)(c), adopted by the General Assembly in 1990, a real estate appraiser is in violation of the licensing Act if the appraiser "[h]as accepted any fees, compensation, or other valuable consideration to influence the outcome of an appraisal." In 1996, the General Assembly determined to be even more specific about prohibited appraiser fee arrangements, prescribing that it is "unlawful for any person to act as an appraiser or expert witness and receive a contingency fee." § 12–61–712(1)(b), 5B C.R.S. (1991 & 1996 Supp.). An appraiser is "any person who provides for a fee or a salary an opinion of the ... value ... of an interest in ... identified real estate." § 12–61–702(5)(a). The legislature left a narrow exception for a person to act as an "agent" and receive a contingency fee so long as that person was not also acting "as an appraiser or expert witness in the same case." § 12–61–712(1)(b).

In 1997, the General Assembly acted to restate its aim by amending section 12–61–712(1)(b) to prohibit contingent fees in connection with an "independent appraisal assignment." Contingent fees are not prohibited when providing a "consulting service" which includes "counseling and advocacy in regard to property tax assessments and appeals thereof," § 12–61–702(2.5),[4] provided that the person discloses "the fact that a

---

fice; in the Teachers case, the value dropped by $1,894,000 or 17% of the value assigned by the Denver Assessor's office; in the Writer case, the value dropped by $125,000 or 17% of the value assigned by the Arapahoc Assessor's office.

4. Section 12–61–702(2.5) states that:
"Consulting services" means services performed by an appraiser that do not fall within the definition of an "independent appraisal" in subsection (4.5) of this section. "Consulting services" includes, but is not limited to, marketing, financing and feasibility studies, valua-

tions, analyses, and opinions and conclusions given in connection with real estate brokerage, mortgage banking, and counseling and advocacy in regard to property tax assessments and appeals thereof; except that, *if in rendering such services the appraiser acts as a disinterested third party, the work shall be deemed an independent appraisal and not a consulting service.* Nothing in this subsection (2.5) shall be construed to preclude a person from acting as an expert witness in valuation appeals.
(Emphasis added.)

contingent fee is or will be paid." § 12–61–712(1)(d); *see also* ch. 148, sec. 1, § 12–61–702, 712, 1997 Colo. Sess. Laws 569–70.

Section 12–61–712(1)(b) now reads as follows:

(1) *It is unlawful for any person to:*

. . .

(b) *Accept a fee for an independent appraisal assignment that is contingent upon:*

(I) The reporting of a predetermined analysis, opinion, or conclusion; or

(II) The analysis, opinion, or conclusion reached; or

(III) The consequences resulting from the analysis, opinion, or conclusion. . . .

(Emphasis added.) The amendments also added new paragraphs (1)(c) and (1)(d) which read as follows:

It is unlawful for any person to:

(c) *Misrepresent a consulting service as an independent appraisal;*

(d) Fail to disclose, in connection with a consulting service for which a contingent fee is or will be paid, the fact that a contingent fee is or will be paid.

(Emphasis added.)

The 1996 and 1997 amendments did not alter the criminal penalty provision applicable to violations of section 12–61–712(1):

(2) Any person who violates any provision of subsection (1) of this section commits a class 3 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S. Any person who subsequently violates any provision of subsection (1) of this section within three years after the date of a conviction for a violation of subsection (1) of this section commits a class 1 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S.

§ 12–61–712(2).

In the three cases before us, we are not called upon to review any sanction imposed by the Board or any criminal conviction for violation of the Act.[5] Rather, we are asked to review whether the BAA should have al-

lowed the appraisers to present their appraisals and testify as experts concerning valuation of the properties in light of the 1996 version of section 12–61–712(1)(b).

## B.

### *The BAA's Construction Of The 1996 Amendments*

■ We are required to construe this provision as written, giving effect to the chosen wording and harmonizing seemingly inconsistent wording where possible. *See Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.*, 919 P.2d 212, 218 (Colo.1996). If the legislative provisions are ambiguous or contradictory, we examine the statutory context and may employ pertinent aids to construction, such as contemporaneous legislative history. *See Mountain City Meat Co. v. Oqueda*, 919 P.2d 246, 252 (Colo.1996).

■ The BAA concluded that section 12–61–712(1)(b) barred the expert testimony only if the appraisers had personally executed the contingent fee agreement or would themselves receive the fee. Because a firm had executed the agreement and would receive the fee, the BAA allowed the testimony in each case. Also, the BAA concluded that the contingent fee ban in the Colorado statute applied only to federal loans and transactions. We are not bound by an agency's legal conclusions. "Construction of a statute is a question of law, not a factual determination." *Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo.1995). When deciding questions of law, a reviewing court acts *de novo. See id.* We now proceed to construe the applicable statutes.

As part of the federal savings and loan bailout effort, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). *See* 12 U.S.C. §§ 3331 to 3351 (1994). The Colorado General Assembly then enacted the statute before us to conform with FIRREA. According to the FIRREA legislative history, Congress adopted that portion of the act

5. We recognize that such a case is not before us. The Board and prosecutors would first have to exercise their enforcement discretion. *See Kour-*

*lis v. District Court*, 930 P.2d 1329, 1337 (Colo. 1997).

dealing with real estate appraisers (Title XI) to remedy abuses in the appraisal business:

> Extensive Congressional hearings, GAO reports and regulatory agency studies have documented the pervasive use of faulty and fraudulent real estate appraisals by unscrupulous thrift managements.... Faulty appraisals make unsafe and unsound real estate loans appear adequately collateralized. Collusion between thrift managers, real estate appraisers and borrowers has cost the [Federal Savings and Loan Insurance Corporation] billions of dollars. In order to thwart real estate appraisal abuses, the legislation establishes a system of uniform national real estate appraisal standards.

Act of August 9, 1989, Pub.L. No. 101–73, 1989 U.S.C.C.A.N. (103 Stat. 511) 107.

FIRREA requires state law to meet the minimum federal guidelines if state-licensed appraisers are to perform appraisals related to federal transactions. FIRREA requires, in part, that state-licensed appraisers follow uniform appraisal standards adopted by the Appraisal Standards Board (ASB) of the Appraisal Foundation. 12 U.S.C. § 3339. These standards are published annually by the ASB as the Uniform Standards of Professional Appraisal Practice (USPAP).

Because FIRREA requires compliance with USPAP, Colorado's statute must, at a minimum, impose standards in conformity with USPAP. USPAP states that it is "unethical" to accept compensation that is contingent upon reporting "a direction in value that favors the cause of the client ... [or] the attainment of a stipulated result." USPAP at 2 (1996). The provision further states that the prohibition on contingent fees does not apply where "the appraiser is *not acting in a disinterested manner and would not reasonably be perceived as performing a service that requires impartiality.*" *Id.* at 3 (emphasis added).

The BAA and taxpayers argue that section 12–61–712(1)(b) is meant to address real estate appraisals only in federal transactions. We disagree. The plain meaning of the statute is clear and we must give effect to it. *See Fogg,* 892 P.2d at 274 (when analyzing the meaning and intent of a statute, a court must first turn to the language of the statute itself).

The General Assembly in 1996 clearly and unambiguously prohibited "any person" from acting "as an appraiser or expert witness and receiv[ing] a contingent fee." Ch. 232, sec. 9, § 12–61–712, 1996 Colo. Sess. Laws 1188, 1196. When the General Assembly wanted to limit applicability of the statute to federal transactions, it did so expressly. For example, the 1996 amendment to section 12–61–712(1)(a) expressly required Board registration, licensure, or certification only for persons performing appraisals "in conjunction with a debt instrument that is federally guaranteed or in the federal secondary market." § 12–61–712(1)(a), 5B C.R.S. (1991 & 1996 Supp.). This narrowed the licensure provisions of the 1990 Act.

In contrast, the language of section 12–61–712(1)(b) expresses no such federal transaction limitation. Sections 12–61–712(1)(a) and (b) are clearly set forth as independent statements of unlawful acts. In arguing for a narrow construction of section 12–61–712(1)(b), despite the obvious absence of the federal transaction limitation contained in the immediately preceding language of paragraph (a), the BAA and the taxpayers point to the Act's legislative declaration that "the General Assembly further finds, determines, and declares that this part 7 is intended to implement the minimum requirements of federal law in the least burdensome manner to real estate appraisers." § 12–61–701.

 When construing potentially conflicting provisions, we give effect to the more specific requirement or prohibition. *See Delta Sales Yard v. Patten,* 892 P.2d 297, 298 (Colo.1995) (construing sections 13–80–102(1)(h) and 13–80–103(1)(c), 6A C.R.S. (1987)). Here, the specific legislative prohibition of section 712(1)(b) against procuring appraiser or expert testimony appearances compensated by contingent fee, is controlling over the more general declaration of section 701, which references FIRREA. While the legislature clearly intended to meet federal standards, it also exercised its independent authority in 1996 to define a state law prohi-

bition broader than FIRREA regarding contingent fee appraiser appearances.

The General Assembly enacted this 1996 state law prohibition in light of a settled principle of American law: expert witnesses should not receive contingent fees. Case law on the subject is sparse because this precept has such wide acceptance. In the few cases speaking to the matter, the courts agree that an expert witness whose fee is contingent upon the outcome is improperly motivated and can not objectively inform the court on an issue about which the court needs additional instruction. "It is the potentially adverse influence of the motivation to enhance his compensation that makes a contingent fee arrangement for an expert witness inappropriate." *New England Tel. & Tel. Co. v. Board of Assessors of Boston*, 392 Mass. 865, 468 N.E.2d 263, 265 (1984). Professor Corbin observes that a bargain to pay compensation to an expert witness for the purpose of "forming an opinion" is lawful "provided that payment is not contingent on success in litigation affected by the evidence." Arthur Linton Corbin, *Corbin on Contracts* § 1430 (1962 & Supp.1997).

In Colorado, Rule 3.4 of the Colorado Rules of Professional Conduct states that "[a] lawyer shall not: ... (b) falsify evidence, counsel or assist a witness to testify falsely, or *offer an inducement to a witness that is prohibited by law.*" Colo. RPC 3.4 (emphasis added). The comment to that rule explains that "the common law rule in most jurisdictions is that it is ... improper to pay an expert witness a contingent fee." Colo. RPC 3.4 cmt. (3).

States have developed such rules because the usefulness of an expert witness "depends in large measure on the degree to which the expert is able to convince the trier of facts of his or her strict and unyielding impartiality to both the parties and their counsel, and to the issues in the case." 1 Douglas Danner & Larry L. Varn, *Expert Witness Checklists* § 1:54 (1993). Based on this rationale, the American Bar Association has supported imposing a prohibition on contingent fees for expert witnesses. *Id.* § 1:09. If the expert's payment is contingent "on the ultimate outcome of the case, the witness' own interest

will become intensified, and the reliability of the testimony and impartiality of the expert's position will be significantly weakened." *Id.* With regard to real estate appraiser expert witnesses, the "contract signed by the appraiser must specifically state that the appraiser's compensation is in no way contingent upon the value determination made or the outcome of the litigation." 2 Douglas Danner & Larry L. Varn, *Expert Witness Checklists* § 5:21 (1993). This is because to provide otherwise would be "unethical." *Id.*

■ The BAA and the taxpayers contend that the appraisers appeared lawfully because they did not personally execute the contingent fee agreements and would not receive the fees. Because their employers were the parties to the fee agreements and the employees were salaried, the BAA held their appearances to be lawful. We disagree. Unless otherwise stated in a specific act, the statutory presumption in Colorado is that "person" includes a corporation. Section 2–4–401 reads: "The following definitions apply to *every* statute, unless the context otherwise requires: ... (8) 'person' means any individual, *corporation*, government...." § 2–4–401(8), 1 C.R.S. (1997) (emphasis added).

The 1996 version of section 12–61–712(1) made it unlawful for "any person" to act as an "appraiser" or "expert witness" and receive a contingent fee. The question before us under the explicit language of the statute is not whether the evidence presented by the appraisers was or was not competent but, rather, whether these appraisers were permitted to appear at all. We hold that this provision banned the appraisers and the employer appraisal firms from appearing and acting in the capacity of appraisers or expert witnesses before the BAA under contingent fee agreements. Corporations act through agents. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 41 (Colo.1997). The appraisal firms should not have allowed their employees to act as appraisers or experts under the contingent fee agreements. Likewise, knowing of the contingent fee agreements before making their appearances, the employees should not have proceeded to deliver their appraisals or expert opinions to the BAA. The individual appraisers are re-

sponsible for their own actions and the corporations are responsible for the actions of their employees.

To construe the statute otherwise would lead to absurd results. Unincorporated individual appraisers could not accept contingent fees but firms employing appraisers could. A significant disparity between professionals providing the same service would result. Courts should avoid a reading which produces such an absurd and legislatively unintended result. *See Board of County Comm'rs v. IBM Credit Corp.,* 888 P.2d 250, 252 (Colo.1995).

### C.

### *Proceedings on Remand*

■ In review of administrative proceedings under section 24–4–106(7), we have plenary authority to review and remand the case for further proceedings if we determine that the agency has acted contrary to law. *See, e.g. Zamarripa v. Q & T Food Stores, Inc.,* 929 P.2d 1332, 1343 (Colo.1997). In the three cases before us, the taxpayers proceeded with the introduction of their evidence based on the state agency's erroneous ruling that the appraiser appearances were lawful. Had the appraisals and expert testimony been disallowed because of the contingent fee agreements, the taxpayers might have made other arrangements with regard to the introduction of evidence or the payment of fees.

■ The purpose of tax protest and appeal proceedings is to arrive at the property's actual value. *See Arapahoe County Bd. of Equalization v. Podoll,* 935 P.2d 14, 16 (Colo.1997). Were we to require exclusion of the taxpayers' evidence, as the Counties seem to suggest, only the Counties' evidence

of value would stand and the BAA's ability to determine value would be substantially hindered. Unless the BAA were to find the Counties' evidence incredible, the record would only support the values proposed by the Counties. With no opposing presentation by the taxpayers, the BAA decisions would be stripped of evidentiary support. Since we cannot determine the extent to which the BAA relied on the appraisers' evidence, basic fairness in pursuit of determining the actual property values as of the statutory assessment date requires a renewed opportunity for evidentiary presentation by the taxpayers and the Counties in the three cases before us. *See Gilpin County Bd. of Equalization v. Russell,* 941 P.2d 257, 265 (adjudicator's testimony in violation of mental process rule required remand); *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913 (Colo.1997) (basic fairness may require new trial when appellate court sets forth new standards for resolving an issue).

■ The legislative history to the 1997 amendments references the cases and dispute now before us as a motivating factor for the 1997 amendments. *See* Memorandum from the Board of Real Estate Appraisers to House Committee on Business Affairs and Labor (Jan. 13, 1997) (on file with the Colorado State Archives). The legislature may effectuate changes to procedures which become applicable to a case that is still pending. *See Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy Dist.,* 739 F.2d 1472, 1476 (10th Cir.1984). Because the BAA must conduct *de novo* proceedings, the provisions of sections 12–61–712(1) & (3), as amended in 1997, are applicable on remand.[6]

---

6. These provisions make a distinction between "independent appraisal assignments" and "consulting services," *see* § 12–61–702(2.5), (4.5), 4 C.R.S. (1997), reflecting the laws of most jurisdictions. Most states have adopted language similar to that found in the comment to USPAP Standard 4 which also distinguishes between independent appraisals for which contingent fees are unlawful and specialty services for which contingent fees may be accepted.

An appraiser retained to act as a disinterested third party (or reasonably perceived by the public as acting as a disinterested third party)

in performing an unbiased consulting service cannot be compensated in a manner that is contingent on the results. However, an appraiser retained to perform a legitimate service such as brokerage, mortgage banking, tax counseling, or zoning advice may be compensated by a fee contingent on the results achieved, but only when a proper disclosure of the role being performed by the appraiser is made.
USPAP at 31 (1996).
Independent appraisals are invariably defined in other state statutes as those for which the

The fees to be paid in each of the three cases before us turned on the result of the proceedings and the appraiser's presentation to the BAA. Such contingent fee agreements cannot be the basis for procuring appraiser appearances or expert testimony under the 1996 version of the statute. The appearances here were unlawful and the BAA should not have allowed them. On remand, the agency is to conduct *de novo* hearings in light of the 1997 amendments.

### III.

Accordingly, we reverse the agency actions, vacate the BAA property valuation determinations, and remand to that agency for further proceedings consistent with this opinion.

appraiser "would be perceived by third parties or the public as acting as a disinterested third party in rendering an unbiased analysis." Ga. Code Ann. § 43–39A–2(13) (1994); *see also* Ala. Code §§ 34–27A–20, 34–27A–24 (1991); Ariz. Rev. Stat. Ann. § 32–3636 (West 1992); La.Rev. Stat. Ann. § 37:3409 (West 1988 & Supp.1997); N.Y. Executive Law § 160–x (McKinney 1993). The few courts that have addressed these provisions have noted that their legislatures outlawed

the contingent fees as against public policy. *See, e.g. Suburban Cable TV Co. v. City of Chester,* 685 A.2d 616, 619 (Pa.Commw.Ct.1996) (Pennsylvania legislature deemed contingent fees in real estate appraiser context to be "contrary to public interest"); *Appeal of Philip Morris,* 335 N.C. 227, 436 S.E.2d 828, 831 (1993) (North Carolina legislature prohibited contingent fee arrangements in real estate appraisal setting because such fees are "contrary to the interests of the public").