The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 12, 2021

## 2021COA107

**No. 20CA0516, *Yen, LLC v. Jefferson County Board of Commissioners* — Taxation — Property Tax — Correction of Errors**

A division of the court of appeals considers when county tax assessors may correct errors in real property valuations. The division concludes that, under section 39-5-125(2), C.R.S. 2020, assessors may only correct "errors in the assessment roll." The division also concludes that assessors do not have broad constitutional authority to correct any and all errors. Instead, assessors' authority to correct errors derives from the detailed statutory scheme enacted by the General Assembly.

Because the county has not alleged that the error in this case fits the statutory criteria, the division rejects the county's position

and affirms the board of assessment appeals' order voiding the corrected notice of valuation.

COLORADO COURT OF APPEALS     **2021COA107**

---

Court of Appeals No. 20CA0516
Board of Assessment Appeals No. 75342

---

Yen, LLC,

Petitioner-Appellee,

v.

Jefferson County Board of Commissioners,

Respondent-Appellant,

and

Board of Assessment Appeals,

Appellee.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE BERGER
Richman and Welling, JJ., concur

Announced August 12, 2021

---

Goldstein Law Firm, L.L.C., Mark W. Gerganoff, Denver, Colorado, for
Petitioner-Appellee

Kimberly Sorrells, County Attorney, Rebecca Klymkowsky, Assistant County
Attorney, Rachel Bender, Assistant County Attorney, Jason W. Soronson,
Assistant County Attorney, Golden, Colorado, for Respondent-Appellant

Philip J. Weiser, Attorney General, Ashley Barrett Carter, Assistant Attorney
General, Denver, Colorado, for Appellee Board of Assessment Appeals

¶ 1    This case requires us to address county tax assessors' authority to correct errors in real property valuations.  The Jefferson County Board of Commissioners (the county) appeals an order of the Board of Assessment Appeals (BAA) voiding the county's corrected notice of valuation (NOV) for real property owned by taxpayer Yen, LLC (Yen).  Because it is undisputed that the county's corrected NOV did not correct an "error[] in the assessment roll," the correction did not meet the statutory criteria in section 39-5-125(2), C.R.S. 2020.  The county therefore did not have the authority to correct the valuation error under that statute.  We reject the county's other asserted bases for error correction, so we affirm the BAA's order.

I.    Relevant Facts and Procedural History

¶ 2    Colorado assessors are statutorily required to mail an NOV to real property owners no later than May 1 in each year.  § 39-5-121(1)(a)(I), C.R.S. 2020.  About two weeks before this statutory deadline, the assessor mailed an NOV to Yen.  This NOV valued Yen's commercial real property, a four-bay self-service car wash, at

1

$99,715, which represented an approximate 5% increase from the prior year's valuation.

¶ 3    However, after mailing this NOV, for reasons not disclosed by the record, the assessor determined that the NOV undervalued Yen's property.  To rectify this supposed undervaluation, the assessor mailed Yen a second NOV after the statutory deadline (corrected NOV).  The corrected NOV valued the property at $299,099, nearly triple the assessed value in the original NOV.

¶ 4    Yen timely protested the valuation contained in the corrected NOV with the assessor, who denied the protest.  Yen did not further appeal the protest denial.

¶ 5    Instead, as permitted under a separate statutory procedure, Yen petitioned for an abatement or refund with the county.  *See* § 39-10-114, C.R.S. 2020.  Yen asserted that the corrected NOV was void because the assessor did not have the statutory authority to issue the corrected NOV after the statutory deadline.  The county denied the petition, and Yen appealed to the BAA.

¶ 6    The BAA concluded that the corrected NOV was void.  The BAA reasoned that assessors must usually mail NOVs by the statutory

deadline and that the corrected NOV did not fall under any of the statutorily prescribed exceptions to that requirement. Specifically, the BAA concluded that the corrected NOV did not fall under the statutory exception allowing for a change in value when the taxpayer protests an assessor's valuation because the corrected NOV was not issued in response to a protest by the taxpayer.

¶ 7 The BAA also concluded that the corrected NOV did not fall under the statutory exception pertaining to omissions and errors. Regarding omissions, the BAA reasoned that the corrected NOV did not correct an omission of property because the assessor had already complied with the statute by timely mailing an NOV valuing Yen's property. Regarding errors, citing section 39-5-125(2), the BAA explained that "the error here has not been shown to be a type that could be readily ascertained what was intended. No evidence has been presented that any such . . . error has occurred."

¶ 8 The county appeals, and we have appellate jurisdiction under section 39-10-114.5(2), C.R.S. 2020.

## II.    Analysis

¶ 9    The county argues that the BAA erred by voiding the corrected NOV.  Specifically, the county contends that it has the authority to send a corrected NOV at any time before it delivers the tax warrant to the state treasurer in January of the following year.  Because the statutes governing property taxation do not authorize the corrected NOV in the circumstances presented here, we reject the county's argument.

### A.    Standard of Review and Statutory Construction

¶ 10    A challenge to an order of the BAA regarding a property tax assessment presents mixed questions of law and fact.  *Thibodeau v. Denver Cnty. Bd. of Comm'rs*, 2018 COA 124, ¶ 6.  We defer to the BAA's findings of fact if they are supported by the record.  *See id.* at ¶ 7.  But we review questions of law de novo, including the BAA's interpretation of relevant statutes.  *Id.* at ¶ 6.

¶ 11    "When interpreting a statute, our primary aim is to effectuate the legislature's intent."  *Nieto v. Clark's Market,* 2021 CO 48, ¶ 12; *see also Riley v. People,* 104 P.3d 218, 220 (Colo. 2004).  We look first to a statute's plain language.  *Bostelman v. People,* 162 P.3d

686, 690 (Colo. 2007). This requires "reading applicable statutory provisions as a whole in order to accord consistent, harmonious, and sensible effect to all their parts." *Prairie Mountain Publ'g v. Regents of Univ. of Colo.*, 2021 COA 26, ¶ 12 (quoting *People in Interest of W.P.*, 2013 CO 11, ¶ 11). "If the statutory language is clear and unambiguous, we do not engage in further statutory analysis." *Bostelman*, 162 P.3d at 690.

¶ 12    "If a statute is ambiguous, the court, in determining the intention of the general assembly, may consider . . . [t]he administrative construction of the statute." § 2-4-203(1)(f), C.R.S. 2020. "[W]hile agency interpretations should be given due consideration, they are 'not binding on the court.'" *Nieto*, ¶ 38 (quoting *El Paso Cnty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 704-05 (Colo. 1993)).

¶ 13    Fundamentally, "we must respect the legislature's choice of language, and we do not add words to the statute or subtract words from it." *Oakwood Holdings, LLC v. Mortg. Invs. Enters., LLC*, 2018 CO 12, ¶ 12. "An exception not made by the legislature is not to be

5

read into the statute." *Lang v. Colo. Mental Health Inst.*, 44 P.3d 262, 264 (Colo. App. 2001).

## B. Law of Property Taxation

¶ 14    Colorado's Constitution provides that

> [e]ach property tax levy shall be uniform upon all real and personal property . . . within the territorial limits of the authority levying the tax.  The actual value of all real and personal property . . . shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property.

Colo. Const. art. X, § 3(1)(a).

¶ 15    To effectuate this constitutional mandate, the General Assembly enacted a comprehensive statutory framework.  Section 39-5-121(1)(a)(I) provides, "[n]o later than May 1 in each year, the assessor shall mail to each person who owns land or improvements a notice setting forth the valuation of such land or improvements."

¶ 16    There are two statutory avenues by which a taxpayer may contest a property valuation.  *See Bea Kay Real Est. Corp. v. Aragon,* 782 P.2d 837, 838-39 (Colo. App. 1989) (addressing prior versions of the two statutes).  One avenue is a taxpayer protest

6

under section 39-5-122, C.R.S. 2020.[1]  If that protest is denied, the taxpayer "may appeal to the county board of equalization."  § 39-5-122(3).  The second avenue is under the abatement statute, which is the statutory basis for the matter before us.  *See* § 39-10-114.

¶ 17    After the board of equalization completes protest appeals, the assessor compiles the assessment roll, listing the taxes due on all taxable property in the county.  § 39-5-123(1)(a), C.R.S. 2020.

¶ 18    The statutes permit or mandate the correction of valuation errors in specific circumstances.  For example, an assessor *must* correct errors that he or she discovers during a taxpayer protest under section 39-5-122(2).  *San Miguel Cnty. Bd. of Equalization v. Telluride Co.*, 947 P.2d 1381, 1384 (Colo. 1997).

¶ 19    Errors must also be corrected under section 39-5-125(1):

> [W]henever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, the assessor shall immediately determine the value of such omitted property and shall list the same on the assessment roll of the year in which the discovery was made . . . .

---

[1] This statute was recently amended by the General Assembly, to take effect in the tax year 2022.  Ch. 301, sec. 12, § 39-5-122, 2021 Colo. Sess. Laws 1812.

This provision, however, does not apply to "previously taxed property that has been undervalued." *In Stitches, Inc. v. Denver Cnty. Bd. of Comm'rs*, 62 P.3d 1080, 1081 (Colo. App. 2002). The *In Stitches* division concluded that the provision "authorize[s] retroactive assessments of property taxes only against 'omitted property,' and not against 'omitted *value*.'" *Id.*

¶ 20    Errors may also be corrected under section 39-5-125(2):

> Omissions and *errors in the assessment roll,* when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time before the tax warrant is delivered to the treasurer or by the treasurer at any time after the tax warrant has come into his hands.

(Emphasis added.)

¶ 21    The assessor must "deliver the tax warrant under his hand and official seal to the treasurer" by January 10 of the following year. § 39-5-129, C.R.S. 2020.

### C.    Correcting Errors in the Assessment Roll

¶ 22    The parties agree that this case does not involve a corrected valuation made during a taxpayer protest, nor does it involve omitted property. Instead, the county argues that it had the

authority to issue a corrected NOV to remedy a valuation error under section 39-5-125(2) and the cases construing it.

¶ 23    While the county and the BAA disagree on the scope of error correction afforded under section 39-5-125(2), they agree that the provision permits county assessors to mail corrected NOVs under *some* circumstances.  The county contends that it has authority to correct errors at any time, and presumably for any reason, before it delivers the tax warrant to the treasurer.  Yen, on the other hand, asserts that section 39-5-125(2) does not apply because that provision addresses "errors in the assessment roll," not errors in NOVs.  Based on the statute's plain language, we agree with Yen.

¶ 24    By its plain terms, section 39-5-125(2) allows the county to correct "errors in the assessment roll, when it can be ascertained therefrom what was intended."  The county claims that the original notice "mistakenly" and "incorrectly" undervalued Yen's property, requiring the corrected NOV.  But all parties agree that the county was not correcting an error in the assessment roll.  In fact, all parties agree that, at the time the county sent the corrected NOV, the assessment roll had not yet been created.  Therefore, even

assuming that section 39-5-125(2) permits assessors to send corrected NOVs to remedy an error in the assessment roll,[2] the county had no authority to issue the corrected NOV under that section in this case.

¶ 25 Colorado Supreme Court precedent supports our plain language analysis. In *Modular Communities, Inc. v. McKnight*, the supreme court addressed a prior version of section 39-5-125 and held that it "expressly authorizes the assessor and treasurer *to correct errors in the assessment roll* at any time, before or after, the treasurer receives the tax warrant." 191 Colo. 101, 103, 550 P.2d 866, 868 (1976) (emphasis added). This holding tracks the statutory language.

¶ 26 True, the correction in *Modular* did not correct an error in the assessment roll. *Id.* at 102, 550 P.2d at 867. Based on these facts, the county argues (and the BAA apparently agrees) that *Modular*

---

[2] The statute says that "errors in the assessment roll . . . may be supplied or corrected by the assessor." § 39-5-125(2), C.R.S. 2020. Because there was no assessment roll, we need not and do not decide the meaning of the "supplied or corrected" language, or whether it permits an assessor to mail a corrected NOV to correct the assessment roll.

permits corrected NOVs even if they are not correcting errors in the assessment roll. We disagree because *Modular* did not address or approve a corrected NOV under these circumstances. Instead, the supreme court addressed the enforceability of a county treasurer's "tax notice," which is essentially a tax bill. *Id.* A tax notice, informing the taxpayer of the property tax due for the past year, is a fundamentally different document than an NOV, which provides the county's assessed value for a taxpayer's property. *Modular* therefore did not address the situation before us: a corrected NOV issued before the creation of the assessment roll.

¶ 27 Neither does *Telluride Co.* require a construction contrary to the statute's plain language. There, the supreme court addressed error correction in response to a taxpayer protest under section 39-5-122(2), C.R.S. 1997. *Telluride Co.*, 947 P.2d at 1383-84. The court held that this statutory provision "requires the assessor to correct '*any* valuation' that is 'erroneous' or 'otherwise improper'" that the county discovers during a taxpayer protest proceeding. *Id.* at 1384 (quoting § 39-5-122(2), C.R.S. 1997). As noted, the

11

corrected NOV in this case was *not* issued in response to a taxpayer protest.

¶ 28    In discussing other avenues for error correction, the supreme court said that "[t]he General Assembly has authorized the assessor to raise valuations that fail to reflect a property's actual value regardless of when the error in valuation is discovered." *Id.* at 1385 (citing § 39-5-125(2), C.R.S. 1997).  This broad statement was unnecessary to the court's decision.  The court's interpretation of section 39-5-125(2) in *Telluride Co.* was therefore dictum.  The supreme court itself has defined dictum as "judicial comment . . . that is unnecessary to the decision in the case and therefore not precedential." *Sullivan v. People*, 2020 CO 58, ¶ 21 n.5 (citation omitted); *see also Main Elec., Ltd. v. Printz Servs. Corp.*, 980 P.2d 522, 526 (Colo. 1999) ("[T]his statement is conclusory and made without analyzing the contract terms and appears as dictum."). "Dictum is not . . . controlling precedent." *Main Elec.*, 980 P.2d at 526 n.2.

¶ 29    We do not apply *Telluride Co.*'s dictum in this case because doing so would require us to violate the supreme court's more

12

recent and ubiquitous teaching: we must give effect to all parts of a statute, and our construction must not render parts of the statute meaningless. *Robinson v. Legro*, 2014 CO 40, ¶ 14; *People v. Hernandez*, 250 P.3d 568, 572 (Colo. 2011); *People v. Terry*, 791 P.2d 374, 376 (Colo. 1990).

¶ 30    Applying *Telluride Co.*'s dictum, as the county would have us do, would render meaningless much of the statutory language addressing error correction. For example, if an assessor could correct an error whenever he or she saw fit, the statutory language specifying "errors in the assessment roll" would be meaningless, as would the requirement that "it can be ascertained therefrom what was intended." *See* § 39-5-125(2). The statutory language addressing the correction of errors of omission would also be superfluous. *See* § 39-5-125(1), (2). And the May 1 deadline for mailing notices would be of no consequence if the assessor could change that valuation at any time thereafter for any reason.

¶ 31    In sum, to be faithful to *Robinson* (and a multitude of other supreme court cases) we must reject the county's construction of section 39-5-125(2) because we must construe "applicable statutory

13

provisions as a whole in order to accord consistent, harmonious, and sensible effect to *all* their parts." *Prairie Mountain*, ¶ 12 (emphasis added) (quoting *W.P.*, ¶ 11); *see also Nieto*, ¶ 12.

¶ 32      We recognize that the statute's plain language compels a potentially anomalous result as to when county assessors can correct the information contained in NOVs. If the assessor proactively identifies an error and mails a corrected NOV before the assessment roll is created, as the assessor did here, that is not permissible under the statute; but if the assessor waits until the assessment roll is created, a correction of an NOV may be permissible.[3] This result may be criticized, but it is not the role of this court to rewrite statutes to improve them. *Dep't of Transp. v. City of Idaho Springs*, 192 P.3d 490, 494 (Colo. App. 2008). Absent express supreme court direction to the contrary, which does not exist here, we will not construe a statute contrary to its plain language.

¶ 33      However, even assuming the validity of the county's position that section 39-5-125(2) allows correction of an erroneous valuation

---

[3] *See supra* note 2.

prior to the compilation of the assessment roll, the county's argument founders on another statutory ground. The county has not asserted, in this court or in the proceedings below, that this is a case in which the correct value could "be ascertained therefrom what was intended." § 39-5-125(2). The county ignores this statutory language, instead arguing that it has broad authority to issue corrected NOVs at any time before delivering the tax warrant to the treasurer. We reject the county's argument because we must give effect to all the statutory language. *W.P.*, ¶ 11; *see also* § 2-4-201(1)(b), C.R.S. 2020 ("In enacting a statute, it is presumed that: . . . [t]he entire statute is intended to be effective."). Therefore, the county had no authority to issue a corrected NOV under section 39-5-125(2).[4]

---

[4] Because the county does not contend that it satisfied the statutory criteria, we need not and do not address the meaning of "when it can be ascertained therefrom what was intended." § 39-5-125(2).

### D. Assessors Do Not Have Nonstatutory Error Correction Authority

¶ 34    The county also contends that it has plenary authority under the Constitution to correct valuation errors.[5]  We reject this argument because the pertinent constitutional language does not support it.

¶ 35    Article X, section 3 of the Colorado Constitution requires that "[t]he actual value of all real and personal property . . . *shall be determined under general laws, which shall prescribe such methods and regulations* as shall secure just and equalized valuations for assessments of all real and personal property."  (Emphasis added.)  The Constitution does not contain self-implementing authority for county assessors but instead expressly requires that statutes govern the rules of property taxation.

¶ 36    To that end, the General Assembly has enacted a detailed legislative scheme.  Nothing in the statutes authorizes county

---

[5] At oral argument, the county appeared to narrow its position, claiming this plenary authority only until the assessment roll is created.  Regardless, our analysis and rejection of the county's claim of broad constitutional authority (or any form of extra-statutory authority) is the same.

assessors to send corrected NOVs whenever they wish. Instead, as discussed, the statutes prescribe specific circumstances in which county assessors may correct errors.

¶ 37    *Bea Kay*, a decision by this court, does not support the county's argument for broad, nonstatutory correction power. In that case, the assessor did not mail a timely NOV, instead mailing one months after the statutory deadline. *Bea Kay*, 782 P.2d at 837. Because no timely NOV had been issued at all, the case addressed omitted property — not error correction, as we have here. *See id.* It is undisputed that the assessor in this case mailed a timely NOV and that Yen's property was not omitted; *Bea Kay* is therefore inapplicable.

### E.    Windfall Considerations Cannot Defeat the Statutory Language

¶ 38    Finally, the county contends that our construction leads to an improper windfall for the taxpayer. We agree that the county's error will result in Yen paying less taxes than the county believes Yen owes for the tax year at issue.[6] But windfall considerations do not

---

[6] Of course, any error does not affect an assessor's ability to adjust the valuation in succeeding years.

permit us to rewrite the statute's clear language. "Courts may not rewrite statutes to improve them."[7] *City of Idaho Springs*, 192 P.3d at 494.

### III. Conclusion

¶ 39    The BAA's order is affirmed.

JUDGE RICHMAN and JUDGE WELLING concur.

---

[7] Because of our disposition, we need not and do not address Yen's other arguments for voiding the corrected notice, or whether those arguments are properly preserved for our review.