**24, INC., Plaintiff–Appellant,**

**v.**

**BOARD OF EQUALIZATION OF ARAP-AHOE COUNTY, and Board of Assess-ment Appeals of the State of Colorado, Defendants–Appellees.**

**No. 89CA1827.**

Colorado Court of Appeals,
Div. C.

Oct. 11, 1990.

Downey, Stuart & Knickrehm, P.C., Thomas E. Downey, Jr., Mary Hurley Stuart, Englewood, for plaintiff-appellant.

Peter Lawrence Vana, III, Arapahoe County Atty., Richard F. Mutzebaugh, Sp. Asst. County Atty., Littleton, for defendants-appellees Board of Equalization of Arapahoe County.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for defendants-appellees Board of Assessment Appeals of State of Colo.

Opinion by Judge ROTHENBERG.

Plaintiff, 24, Inc. (taxpayer) appeals an order of the Colorado Board of Assessment Appeals (State Board) denying its petition, and the State Board's affirmance of the actual values set by the assessor on three parcels of land owned by taxpayer. We reverse.

In May 1988, taxpayer received Notices of Valuation for three parcels of real property in Arapahoe County, Colorado. These notices placed the actual value of the property for 1988 tax purposes at $9,049,483.

Taxpayer protested the valuation, claiming that the actual value of the property was $2,037,970 as was determined in a 1987 proceeding before the State Board. The assessor denied the protest, and taxpayer appealed the decision to the Board of Equalization of Arapahoe County which also denied taxpayer's petition.

Taxpayer then appealed the 1988 valuation to the State Board. At the hearing, taxpayer presented expert testimony that the proper value of the property based upon a developer's present worth method was between $2,220,000 and $2,825,000.

The State Board found that the assessor had properly used applicable state statutes and Division of Property Taxation manuals and guidelines in valuing the property and that the developer's present worth method of valuation was incorrectly applied. The State Board also noted that the 1987 values were based on different testimony and evidence. Accordingly, it denied the petition.

On appeal, taxpayer argues that the State Board acted contrary to law in denying its petition. We agree.

### I.

■ Section 39–1–103(5)(a), C.R.S. (1990 Cum.Supp.) provides the methods to be used by a county assessor in determining the actual value of real property. It states in relevant part:

> "The actual value of [real] property ... shall be that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal. The assessor shall consider and document all elements of such approaches that are applicable prior to a determination of actual value."

The actual value is used to determine the valuation for assessment which represents a percentage of the actual value. Taxes are then levied against the valuation for assessment. Section 39–1–104(1), C.R.S. (1990 Cum.Supp.).

■ An assessor is not required to appraise all the real property in his or her jurisdiction every year. Rather, the General Assembly has created a method of as-

signing value to property under which the value *for a number of years* is based upon a specified year's level of value. Until January 1, 1989, the specified year was referred to as the base year, § 39–1–104(9)(c), C.R.S. (1982 Repl.Vol. 16B) (repealed, effective January 1, 1989), and the base year value was used to calculate the property's assessed value every year until a new base year was fixed and the property was revalued. *Carrara Place, Ltd. v. Arapahoe County Board of Equalization*, 761 P.2d 197, 200 (Colo. 1988).

Although the base year terminology has now been repealed, the base year method applies to this appeal, and the parties agree that, in order to determine the actual value of this taxpayer's property for the 1987 and 1988 tax years, the assessor was required to use 1985 as the base year. Section 39–1–104(10.1)(a), C.R.S. (1990 Cum. Supp.).

■ Under the law applicable here, once a property's base year value was determined, there were only three ways that the property could be revalued to a higher or lower level during intervening years: (1) to correct a clerical error or supply a clerical omission; (2) to adjust for an unusual condition; or (3) to correct an incorrect value.

### A. CORRECTION OF CLERICAL ERRORS OR OMISSIONS

Section 39–5–125, C.R.S. (1982 Repl.Vol. 16B) provides:

"(1) Whenever it is discovered that any taxable property has been omitted from the assessment roll of any year or series of years, the assessor shall immediately determine the value of such omitted property and shall list the same on the assessment roll of the year in which the discovery was made and shall notify the treasurer of any unpaid taxes on such property for prior years."

"(2) Omissions and errors in the assessment roll, when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time before the tax warrant is delivered to the treasurer or by the treasurer

at any time after the tax warrant has come into his hands."

This statute has been construed to allow treasurers and assessors to correct errors and to supply clerical omissions to the assessment roll. *See Modular Communities, Inc. v. McKnight*, 191 Colo. 101, 550 P.2d 866 (1976) (assessor or treasurer may correct error of clerk in transcribing assessor's records onto the assessment notice sent to the taxpayer); *San Luis Power & Water Co. v. Trujillo*, 93 Colo. 385, 26 P.2d 537 (1933) (for property omitted from assessment through assessor's error, treasurer obligated to make assessment and assert arrearage in tax warrant); *Haley v. Elliott*, 20 Colo. 379, 38 P. 771 (1894) (where treasurer was able to ascertain that the figures from the assessor's list were intended to represent dollars, he could insert omitted dollar signs); and *Chew v. Board of Assessment Appeals*, 673 P.2d 1028 (Colo.App.1983) (county assessor may retroactively assess taxes on property previously omitted from the assessment rolls).

Here, the record is devoid of any evidence that a clerical error occurred. Therefore, contrary to the State Board's contention, the statutory language and these cases make it abundantly clear that § 39–5–125 cannot be used to justify this increase in the value of taxpayer's property.

### B. ADJUSTMENT FOR UNUSUAL CONDITIONS

During intervening years, *i.e.*, those years between base years, an assessor may revalue property to reflect an increase or decrease in actual value attributable to an unusual condition. Colo.Sess.Laws 1988, ch. 267, § 39–1–104(11)(b)(I) at 1272.

An unusual condition has been defined as follows:

"The installation of an on-site improvement, the ending of the economic life of an improvement with only salvage value remaining, the addition to or remodeling of a structure, a change of use of the land, the creation of a condominium ownership of real property ... any new regu-

lations restricting or increasing the use of the land, or a combination thereof, any detrimental acts of nature, and any damage due to accident, vandalism, fire, or explosion...." Colo.Sess.Laws 1988, ch. 267, § 39–1–104(11)(b)(I) at 1272.

Here, taxpayer appealed the assessor's valuation of its property for the tax year 1987, and, after a hearing, the State Board found the actual value of the same property for the 1987 tax year was $2,037,970. At the 1988 hearing, all witnesses agreed that there had been no changes to, or unusual conditions on, the land between January 1, 1987, and January 1, 1988, as contemplated by the statute. On appeal, the State Board concedes that no unusual conditions occurred in 1988 that would justify an increase in property value.

It is therefore beyond dispute that the assessor lacked authority to increase the value of taxpayer's property based on unusual conditions. *See Leavell–Rio Grande Central Associates v. Board of Assessment Appeals,* 753 P.2d 797 (Colo.App. 1988).

## C. CORRECTION OF INCORRECT VALUE

The State Board relies on other language in Colo.Sess.Laws 1983, ch. 429, § 39–1–104(11)(b)(I) at 1495, however, as authority for increasing the property value for 1988. That language states in pertinent part:

"*If any real property has not been assessed at its correct base year level of value, the assessor may revalue such property for an intervening year so that the actual value of such property will be its correct base year level of value;* however, the assessor may not revalue such property above or below its correct base year level of value except as necessary to reflect the increase or decrease in actual value attributable to an unusual condition." (emphasis added)

In a nutshell, the State Board claims that the taxpayer's property was incorrectly valued at $2,037,970 in 1987. Therefore, it argues, the assessor had authority to revalue it in the tax year 1988 to a corrected

value of $9,049,483. The State Board argues that the "unusual condition" language in § 39–1–104(11)(b)(I) applies only to property which is correctly valued.

■ The statutory language emphasized above, which refers to a *correct base year level of value,* was not added until 1983 when the statute was amended. Colo.Sess. Laws 1983, ch. 429, § 39–1–104(11)(b)(I) at 1495. Where statutory language is clear and unambiguous, there is no need to resort to interpretative rules of statutory construction. However, if as here, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may look to pertinent legislative history to determine the purpose of the legislation. *See People v. Terry,* 791 P.2d 374, 376 (Colo.1990); and *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989).

Representative Schauer, who proposed the amendment, stated the legislative intent as follows:

"The Board of Assessment Appeals' position is that once an assessor values property, that value cannot be changed until the next base year unless an unusual condition exists....

If I make a mistake and value the property too high or too low, I need the ability in between base years to reappraise the property, *as long as I do not exceed what the property was worth in the base year.*

For example, if the base year value is $10,000 and I value it at $8,000, I want to be able to revalue it to $10,000. If there is an unusual condition, the value could go over the $10,000...."

*See* Hearings on H.B. 1004 before the House Finance Committee, 54th General Assembly, 1st Session, (January 17, 1983) (emphasis added).

■ It is apparent from the legislative history that the amendment was designed to give county assessors authority to correct an incorrect assessment in or between base years; *however, absent proof of an incorrect valuation of the base year, or proof of an unusual condition,* the Gener-

al Assembly did not intend to allow the assessor's corrected value to exceed the value assigned to the property in the base year.

In sum, we agree with the State Board's interpretation of the statute; however, here the assessor failed to demonstrate that the property was worth more than $2,037,970 in the 1985 base year or in 1987. Under these circumstances, we must accord a presumption of correctness to the 1987 valuation, as determined by the State Board.

## II.

■ The method of valuation for tax purposes is a legislative function and not a proper subject for judicial determination. *Salt River Project Agricultural Improvement & Power District v. Board of Assessment Appeals*, 719 P.2d 368 (Colo.App. 1986). Thus, our review is confined to the narrow issue of whether the agency abused its discretion by misapplying the statutory requirements for tax assessments. *See Board of Assessment Appeals v. Sonnenberg*, 797 P.2d 27 (Colo.1990).

We hold that the assessor failed to establish a legal basis for increasing the actual value of taxpayer's property for 1988 tax purposes. The State Board also abused its discretion when it affirmed the 1988 assessment. In view of our decision, we need not consider taxpayer's argument that collateral estoppel precluded the increase in the property value.

The order of the State Board is reversed, and the cause is remanded to the State Board with directions to change the assessment for the 1988 tax year to $2,037,970.

Judge HUME and Judge RULAND concur. ·