The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 23, 2018

## 2018COA124

## No. 17CA0653 Thibodeau v. Denver Cty. Bd. Comm'rs — Taxation — Property Tax — Valuation for Assessment

A division of the court of appeals holds that section 39-1-104(11)(b)(I), C.R.S. 2017, authorizes an assessor to revalue real property in an intervening tax year if the assessor discovers that the original assessment was incorrect at the time it was originally done. While this interpretation was previously announced in *24, Inc. v. Board of Equalization*, 800 P.2d 1366 (Colo. App. 1990), the relevant statute has been subsequently amended.  This decision makes clear that the statutory amendment did not alter the assessor's authority in this regard.  Further, in each of the prior published decisions related to this language, the prior division ruled that although the assessor had this authority, the taxpayer in that specific case nevertheless won because the assessor had failed to establish that

the original valuation was incorrect.  This is the first published

decision where the assessor's actions are upheld.

COLORADO COURT OF APPEALS                                    2018COA124

_____

Court of Appeals No. 17CA0653
Board of Assessment Appeals Case No. 68926

_____

Joseph H. Thibodeau,

Petitioner-Appellant,

v.

Denver County Board of Commissioners and Board of Assessment Appeals,

Respondents-Appellees.

_____

ORDER AFFIRMED

Division II
Opinion by JUDGE TOW
Dailey and Casebolt*, JJ., concur

Announced August 23, 2018

_____

N.H. Wright and Associates, Norman H. Wright, Dillon, Colorado, for Petitioner-
Appellant

Kristin M. Bronson, City Attorney, Noah Cecil, Assistant City Attorney, Denver,
Colorado, for Respondent-Appellee Denver County Board of Commissioners

Cynthia H. Coffman, Attorney General, John A. Lizza, First Assistant Attorney
General, Denver, Colorado, for Respondent-Appellee Board of Assessment
Appeals


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Petitioner, Joseph H. Thibodeau, appeals an order of the Board of Assessment Appeals (BAA) denying his abatement petition for the 2014 tax year.  We affirm.

I.     Background

¶ 2     Thibodeau purchased the subject property, a residence located in the City and County of Denver, in July 2013.  Earlier that year, the property was valued at $803,800 for ad valorem tax purposes.  In May 2014, Thibodeau received notice that the City and County of Denver Assessor's Office increased its assessment of the property's value to $1,169,700.

¶ 3     Thibodeau unsuccessfully protested the increase with the Assessor before petitioning for abatement from the Denver County Board of Commissioners, sitting as the Denver County Board of Equalization (BOE).  Thibodeau argued that the City erred in reassessing the subject property in an intervening year because no unusual condition existed.  The BOE rejected his claim and upheld the 2014 assessment.

¶ 4     Thibodeau then filed an appeal with the BAA, again contending that the BAA should reduce the subject property's 2014 value to the 2013 value of $803,800.  At the hearing, the BOE

1

requested that the property's value be lowered from $1,169,700 to $1,150,000, based on an appraisal by a licensed residential appraiser. The BAA concluded that the mischaracterization of the property's condition as average, rather than good, led to an incorrect 2013 assessment of the property's value. Therefore, the assessor was permitted to correct the incorrect assessment during the intervening year. Additionally, the BAA found that there was sufficient evidence to support the value testified to by the appraiser.

¶ 5    On appeal, Thibodeau argues that the BAA erred in upholding the City and County of Denver's reassessment of his property because section 39-1-104(11)(b)(I), C.R.S. 2017, only permits redeterminations in intervening years when unusual conditions exist. He also contends that the reassessment violated his constitutional right to equal protection in light of the Supreme Court's decision in *Allegheny Pittsburgh Coal Co. v. County Commission*, 488 U.S. 336 (1989). We consider, and reject, each contention in turn.

## II.    Standard of Review

¶ 6    A challenge to the BAA's property tax assessment requires us to review questions of law and fact. We may only set aside the

2

BAA's decision if the BAA failed to abide by the statutory scheme for calculating property taxes, or its decision is unsupported by competent evidence. *Jefferson Cty. Bd. of Cty. Comm'rs v. S.T. Spano Greenhouses, Inc.*, 155 P.3d 422, 424 (Colo. App. 2006). Because statutory interpretation is a question of law, we review the BAA's interpretation of the relevant statute de novo. *Id.*

¶ 7     However, we defer to the BAA's findings of fact. "It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts." *Bd. of Assessment Appeals v. Sampson,* 105 P.3d 198, 208 (Colo. 2005). And, Thibodeau bears the burden of proving by a preponderance of the evidence that the property assessment is incorrect. *Id.* at 202.

III.   Correction of a Property Assessment in an Intervening Year

¶ 8     Thibodeau first contends that the BAA erred in concluding that the assessor was permitted to reassess his property value in an intervening year without showing that an unusual condition existed. We conclude that section 39-1-104(11)(b)(I) authorizes assessors to correct incorrect property assessments in intervening years.

## A.  The Assessor's Authority

¶ 9    Section 39-1-104(10.2)(a) provides that "beginning with the property tax year which commences January 1, 1989, a reassessment cycle shall be instituted with each cycle consisting of two full calendar years."  In other words, property value assessments are calculated once every two years.  But, reassessments of property values are permitted in intervening years if "any unusual conditions in or related to any real property which would result in an increase or decrease in actual value" exist.[1] § 39-1-104(11)(b)(I).  Additionally, the statute provides that

> [i]f any real property has not been assessed at its correct level of value, the assessor shall revalue such property for the intervening year so that the actual value of such property will be its correct level of value; however, the assessor shall not revalue such property above or below its correct level of value except as necessary to reflect the increase or decrease in actual value attributable to an unusual condition.

*Id.*

---

[1] As applicable here, an unusual condition includes the installation of an onsite improvement or the addition to or remodeling of a structure.  § 39-1-104(11)(b)(I), C.R.S. 2017.

¶ 10    Thibodeau contends that the statute restricts property reassessments in intervening years to only instances where unusual conditions arise. Because no unusual condition exists here, he argues that the property was improperly reassessed during an intervening year. Divisions of this court have addressed, and rejected, similar arguments.

¶ 11    The statutory language quoted above was first enacted, albeit in slightly different form, in 1983. At that time, the legislature added the following sentence to the statute:

> If any real property has not been assessed at its correct base year level of value, the assessor may revalue such property for an intervening year so that the actual value of such property will be its correct base year level of value; however, the assessor may not revalue such property above or below its correct base year level of value except as necessary to reflect the increase or decrease in actual value attributable to an unusual condition.

Ch. 429, sec. 1, § 39-1-104(11)(b)(I), 1983 Colo. Sess. Laws 1495.

¶ 12    In *24, Inc. v. Board of Equalization*, 800 P.2d 1366, 1368 (Colo. App. 1990), a division of this court determined that this language granted assessors the authority to revalue properties during intervening years under three circumstances: "(1) to correct a

5

clerical error or supply a clerical omission; (2) to adjust for an unusual condition; or (3) to correct an incorrect value." In its analysis, the division acknowledged that the statutory language governing reassessments during intervening years was unclear. *Id.* at 1369. Accordingly, the division turned to the legislative history underpinning the statute to determine its purpose.[2] *Id.*; *see Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16 (explaining that courts employ interpretive rules when the statutory language is subject to alternative constructions and its intended scope is unclear).

¶ 13    The division concluded that the statute was intended to provide assessors the authority to correct an incorrect assessment in or between base years. *24, Inc.*, 800 P.2d at 1369. And, other divisions of this court have agreed that county assessors may correct property value assessments in intervening years. *See*

---

[2] During a legislative committee hearing, the bill sponsor explained that if an assessor "make[s] a mistake and value[s] the property too high or too low, [the assessor] need[s] the ability in between base years to reappraise the property, *as long as [the assessor] do[es] not exceed what the property was worth in the base year.*" *24, Inc. v. Bd. of Equalization*, 800 P.2d 1366, 1369 (Colo. App. 1990) (quoting Hearing on H.B. 1004 before the H. Fin. Comm., 54th Gen. Assemb., 1st Sess. (Jan. 17, 1983)).

6

*Leavell-Rio Grande Cent. Assocs. v. Bd. of Assessment Appeals*, 753 P.2d 797, 800 (Colo. App. 1988) (concluding that assessors may revalue properties in intervening years to correct incorrect base value assessments); *see also Lowe Denver Hotel Ass'n v. Arapahoe Cty. Bd. of Equalization*, 890 P.2d 257, 258-59 (Colo. App. 1995) (explaining that assessors may make corrective intervening-year revaluations when the assessor's original base period valuation for the first year of the reassessment cycle is incorrect).[3]

¶ 14　　The pertinent statutory language has been amended only once since then, and that amendment does not impact the applicability of the analysis in *24, Inc.*[4]　Therefore, we disagree with Thibodeau that reassessments during intervening years are permitted only when unusual conditions exist.　Instead, we conclude that county

---

[3] Thibodeau characterizes this announcement in *24, Inc.*, as dicta. He is mistaken.　"A holding and its necessary rationale, however, are not dicta."　*Hardesty v. Pino*, 222 P.3d 336, 340 (Colo. App. 2009) (citing Michael Abramowicz & Maxwell Stearns, *Defining Dicta*, 57 Stan. L. Rev. 953, 1048 (2005)).

[4] In 1987, the legislature made two changes: the provision went from permissive ("the assessor *may* revalue such property for an intervening year") to mandatory ("the assessor *shall* revalue such property"), and the year beginning the reassessment cycle would no longer be referred to as "the base year."　Ch. 285, sec. 1, § 39-1-104(11)(b)(I), 1987 Colo. Sess. Laws 1385.

assessors are required to correct incorrect assessments in intervening years in order to set the value at what it would have been set at in the assessment year had the mistake not occurred. Further adjustments to the value, however, cannot be made in an intervening year absent proof of an unusual condition.

## B. The Corrected Assessment

¶ 15 We must next determine (1) whether Thibodeau's property was incorrectly assessed during the 2013 assessment year and (2) whether there is competent evidence to support the 2014 corrected value. We answer both questions in the affirmative.

¶ 16 At the BAA hearing, a certified residential appraiser and an employee of the county assessor's office testified that the subject property was misidentified as being in average, rather than in good, condition during the 2013 assessment year. The county assessor explained that the appraisal system accounts for the condition of the property by determining the property's condition, desirability, and utility. Consequently, a mischaracterization of the property's condition may result in an inaccurate assessment of the property's value.

¶ 17 When assessing a property's condition, the assessor testified that the county assessor's office examines permit records from the county's planning department to determine whether improvements have been made on the property. The county assessor explained that a house built in the 1930s that had not undergone renovations or remodeling is considered a house in average condition. But, the assessor's office "always assume[s] . . . in the absence of any other knowledge . . . that the condition is average." Here, the assessor's records indicated that the property had not been remodeled since its construction in 1938.

¶ 18 In June 2013, after the assessment was completed, the property was listed for sale, during which pictures and a description of the property were posted on the Multiple Listing Service (MLS) website. The MLS listing described the property as containing a "brand new gourmet kitchen, bathrooms, copper pipes, new electrical, [and a] wine cellar," and the photographs, according to the assessor, indicated that the "kitchen and also the bathrooms [had] been renovated and remodeled." The county assessor subsequently "updated" the property's record to indicate that the property was in good condition.

¶ 19    After modifying the record, the assessor then revalued the property, taking into consideration the newly discovered information that the property had been in good, not average, condition at the time of the 2013 assessment.  During the hearing, the county assessor testified that he used a market approach, in which he used three comparable sales, to determine that the property's correct value was $1,150,000 on January 1, 2013.  Thibodeau did not present evidence that the BOE's corrected value was incorrect.  Rather, he argued only that reassessing the property during an intervening year was improper because the BOE could not point to an unusual condition that arose between 2013 and 2014.[5]

---

[5] During the hearing, Pamela King, a professional interior decorator, testified that she helped to "reface" the kitchen in 2009.  She explained that she assisted in only completing "cosmetic things to the house" — such as repainting kitchen cabinets and installing countertops, a sink, a stair runner, and window coverings.  Even so, the assessor testified that the property was in good condition not only because of the kitchen alterations but also due to significant, and previously unknown, renovations to the property's plumbing, electrical system, and bathrooms that had occurred over time prior to the 2013 assessment.  Thus, while we agree with Thibodeau that there was no unusual condition warranting reassessment during the intervening year, a corrected assessment was nonetheless permitted because the 2013 assessment was based

¶ 20     At the conclusion of the hearing, the BAA determined that the

subject property was incorrectly assessed in 2013 and there was

competent evidence to support the BOE's corrected value of

$1,150,000.  We agree.

¶ 21     A property's value must be assessed "according to its taxable

status, use, and *condition* on the assessment date."  2 Div. of Prop.

Taxation, Dep't of Local Affairs, *Assessors' Reference Library* § 2, at

2.6 (rev. July 2018) (emphasis added).  Here, the county assessor

initially classified the house as average based on an incorrect

assumption that the property had not been renovated or remodeled

since 1938.  As a result, the records used to determine the

property's value in 2013 differed significantly from the depiction of

the property in the June 2013 MLS listing.  Because the 2013

property assessment relied on an incorrect characterization of the

property's condition, the county assessor's office was permitted,

indeed required, to correct the assessment in 2014.

_____

on an incorrect assumption that the property was in average
condition at that time.

11

¶ 22　　Moreover, there is substantial evidence in the record to support the BAA's conclusion that the property's appraisal of $1,150,000 was persuasive and well-supported. The county assessor explained how a misclassification of a property's condition can lead to a significant miscalculation of the property's value for tax purposes. And, the assessor presented substantial evidence on the process by which the property's value was recalculated. We therefore conclude that the BAA's factual determinations as to the appropriate valuation of the subject property for the 2013 tax year is supported by competent and substantial evidence in the record as a whole, and the BAA's ruling therefore will not be disturbed on review. *See Weingarten v. Bd. of Assessment Appeals*, 876 P.2d 118, 121 (Colo. App. 1994).

IV.　　Constitutional Challenges

¶ 23　　Thibodeau also contends that the BOE's off-cycle reassessment of the property's value violated the Equal Protection Clause of the United States Constitution, as well as the Colorado Constitution's guarantee of uniform taxation. We are not persuaded.

## A.    Standard of Review

¶ 24    The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This provision requires the government to treat similarly situated persons in a similar manner.  *HealthONE v. Rodriguez*, 50 P.3d 879, 892 (Colo. 2002).  Because the BOE's actions did not affect Thibodeau's fundamental right or a suspect class, so long as the BOE's actions are not unreasonable, arbitrary, or capricious, they need only bear a rational relationship to legitimate governmental objectives.  *Id.* at 893.

## B.    Applicable Law and Analysis

¶ 25    Thibodeau contends that the BOE's actions are in tension with the Supreme Court's decision in *Allegheny Pittsburgh Coal Co. v. County Commission*, 488 U.S. 336 (1989).  In *Allegheny*, the county tax assessor systematically revalued properties on the basis of their recent purchase prices and made only minor modifications in the assessments of land that had not been recently sold.  *Id.* at 338.  Consequently, properties that were sold when this practice was in place were assessed significantly higher than comparable

neighboring properties that had not been recently sold. *Id.* at 342. The Court concluded that the assessor's practice of assessing only recently sold properties, and nominally adjusting properties that had not recently sold, resulted in significant discrepancies in the value of comparable properties over time. *Id.* at 346. The Court observed that the "[p]etitioners' property [had] been assessed at roughly 8 to 35 times more than comparable neighboring property, and these discrepancies [had] continued for more than 10 years with little change." *Id.* at 344. The petitioners, therefore, had been denied the equal protection of the law. *Id.* at 346.

¶ 26 Thibodeau contends that the county assessor here is engaging in a similar practice to that rejected in *Allegheny*. The comparison, however, is inapt. In *Allegheny*, property values were assessed only when a sale of the property occurred; unless a property was sold, its assessed value was likely to remain largely unchanged for years. Here, on the other hand, the statute requires all properties to be reassessed every two years — regardless of whether they have been recently sold — with the ability to remedy an incorrect assessment or account for an unusual condition in an intervening year.

¶ 27      The mere fact that the county assessor became aware of the incorrect valuation as a result of the routine sales verification process does not raise the concerns addressed in *Allegheny*. There is simply no evidence that Thibodeau's property is assessed at a significantly different value than comparable properties, or that any such discrepancy has existed for any length of time.

¶ 28      Thibodeau also contends that "increasing the valuation of a single property [based on the sales verification process] while not raising the values of all properties in the same class (let alone, in the same neighborhood)" violates the Equal Protection Clause. But, the fact that two properties are in the same class or same neighborhood does not necessarily mean they are similarly situated. Thibodeau would have to show (1) there were other homes that were incorrectly valued in the assessment year; (2) the assessor became aware of these incorrect values; and (3) the values were not corrected in the intervening year. There was no such showing here. In fact, the Board of Commissioners makes clear that the sales verification process, which is used to evaluate the accuracy of the county's property records, applies to all properties that are recently sold. And, Thibodeau does not present any evidence indicating

15

otherwise. We therefore cannot determine that the subject property was treated differently from similarly situated properties.

¶ 29    Because we conclude that the assessment value of the subject property was corrected upon the discovery that the original assessment was based on an incorrect determination of the property's condition, not because of the sale of the property, and that similarly situated properties also undergo the sales verification process employed here to determine that the property was incorrectly assessed, we discern no equal protection concerns.

## C.    Colorado's Uniformity Clause

¶ 30    Thibodeau also argues that the revaluation violates the Uniformity Clause of the Colorado Constitution. Colo. Const. art. X, § 3(1)(a). This provision provides that the methods and regulations underpinning tax assessments "shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article." *Id.* The protections provided by the Uniformity Clause are co-extensive with those ensured by the federal Equal Protection Clause. *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 310 P.3d 113, 120 (Colo. App. 2011),

16

*aff'd*, 2013 CO 39.  Thus, because we conclude there is no violation of the Equal Protection Clause, this argument, too, must fail.

## V.    Conclusion

¶ 31    The order is affirmed.

JUDGE DAILEY and JUDGE CASEBOLT concur.