The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 6, 2022

## 2022COA117

**No. 21CA0552, *MLS Properties, Inc. v. Weld Cnty. Bd. of Equalization* — Real Property; Taxation — Property Tax — Valuation for Assessment — Level of Value — Unusual Conditions**

In Colorado, real property value for property tax assessment is calculated every two years.  The county assessor determines the level of value of a property, which takes effect on January 1 of odd-numbered years.  The property's level of value is generally carried over to the even-numbered year and can only be modified under three circumstances, including to adjust for certain statutorily described unusual conditions affecting the property.

The plaintiff property owners claimed that two unusual conditions under section 39-1-104(11)(b)(I), C.R.S. 2021, required the assessor to revalue their properties for the 2020 tax year, claiming (1) the COVID-19 pandemic was a detrimental act of

nature and (2) the various governmental orders issued in response to the pandemic were new regulations restricting the use of their land.

The district court granted the defendants' motion to dismiss the action under C.R.C.P. 12(b)(5), holding that, as a matter of law, the pandemic and resulting orders occurred too late to be considered for 2020 property valuations.

A division of the court of appeals concludes, in a matter of first impression, that section 39-1-104(11)(b)(I) requires the assessor to consider unusual conditions that occur at any point during the even-numbered calendar year of the reassessment cycle, not just those that are present before January 1 of the even year. The division also concludes that the complaint was specific enough to survive a C.R.C.P. 12(b)(5) motion to dismiss. Finally, the division concludes that the record is insufficient to conclude as a matter of law whether the pandemic or the governmental orders were unusual conditions requiring revaluation of the taxpayers' properties.

COLORADO COURT OF APPEALS **2022COA117**

Court of Appeals No. 21CA0552
Weld County District Court No. 20CV30593
Honorable Todd Taylor, Judge

MLS Properties LLC, 736 Baseline LLC, 2528 W. 16th Street LLC, 3200 Village Vista Drive LLC, Adams Bank Trust, Ashton Greeley Property LLC, Scott T. Banzhaf, BFI Medical Waste Inc., Boulder Marine Inc., Boulder Scientific Company, Brown Business Properties LLC, C & K Investment Properties LLC, Capitol 3109 LLC, Carbon Element SPE LLC, Code 3 Associates, Inc., Crestone Peak Resource Holdings LLC, Diesel Service Property LLC, Early Education Enterprises LLC, EJ Holdings Inc., Exit LTP Investments LLC, FEI Energy Fund LLC, Ferrous Development LLC, First National Bank of Johnstown, Garretson Family Partnership LLLP, GEP Investments Inc., Gtuida LLC, Highway 119 LLC, Jagadar LLC, Kersey Hotel LLC, Liberty Aviation LLC, Marsid Land LLC, MJ 3106 LLC, Mountain States Rosen LLC, MP 4665 LLC, Nan Madeira Stuart Trust, Norlarco Credit Union, NVW LLC, PAR 4 Properties LLC, PHI Enterprises LLC, Raw Property LLC, RC 4689 LLC, Riggs & Dicken Properties LLC, Ritchie Bros. Properties Inc., Rolinda Colorado Co LTD, Silver Coin Investments, Texas Roadhouse Holdings LLC, Union Colony Bank, Ana Uyemjura, Weaver 880 LLC, Westlake Village II LLC, Westlake Village LLC, White Peaks Property II LLC, Wide Open Real Estate LLC, Willco IV Development LLLP, Willco VIII Development LLLP,

Plaintiffs-Appellants,

v.

Weld County Board of Equalization and Brenda Dones, Weld County Assessor,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE KUHN
Navarro and Lipinsky, JJ., concur

Announced October 6, 2022

Hutchinson Black and Cook, Glen F. Gordon, Boulder, Colorado; Law Offices of James P. Bick, Jr. PC, James P. Bick, Jr., Chesterfield, Missouri, for Plaintiffs-Appellants

Bruce Barker, County Attorney, Karin McDougal, Assistant County Attorney, Greeley, Colorado, for Defendants-Appellees

Nancy Rodgers, City and County Attorney, Patricia W. Gilbert, Deputy City and County Attorney, Broomfield, Colorado, for Amicus Curiae City and County of Broomfield Assessor and Board of Equalization

Ron Carl, County Attorney, Benjamin P. Swartzendruber, Assistant County Attorney, Littleton, Colorado, for Amicus Curiae Arapahoe County Assessor and Board of Equalization

Ben Pearlman, County Attorney, Michael A. Koertje, Assistant County Attorney, Boulder, Colorado, for Amicus Curiae Boulder County Assessor and Board of Equalization

Heidi M. Miller, County Attorney, Meredith P. Van Horn, Assistant County Attorney, Brighton, Colorado, for Amicus Curiae Adams County Assessor and Board of Equalization

Kimberly Sorrells, County Attorney, Rebecca Klymkowsky, Assistant Deputy County Attorney, Rachel Bender, Parker Smith, Jason Soronson, Assistant County Attorneys, Golden, Colorado, for Amicus Curiae Jefferson County Assessor and Board of Equalization

Kenneth R. Hodges, County Attorney, Steven Klaffky, Senior Assistant County Attorney, Colorado Springs, Colorado, for Amicus Curiae El Paso County Assessor and Board of Equalization

Amy T. Markwell, County Attorney, Telluride, Colorado, for Amicus Curiae San Miguel County Assessor and Board of Equalization

Lance J. Ingalls, County Attorney, Dawn L. Johnson, Senior Assistant County Attorney, Megan L. Taggart, Assistant County Attorney, Castle Rock, Colorado, for Amicus Curiae Douglas County Assessor and Board of Equalization

Erick Knaus, County Attorney, Lynaia M. South, Senior Assistant County Attorney, Steamboat Springs, Colorado, for Amicus Curiae Routt County Assessor and Board of Equalization

Philip J. Weiser, Attorney General, Robert H. Dodd, First Assistant Attorney General, John H. Ridge, Senior Assistant Attorney General, Jessica E. Ross,

Assistant Attorney General, Denver, Colorado, for Amicus Curiae The Colorado Property Tax Administrator

Todd M. Starr, County Attorney, Andrea Nina Atencio, Chief Deputy County Attorney, John R. Rhoads, Assistant County Attorney II, Grand Junction, Colorado, for Amicus Curiae Mesa County Assessor and Board of Equalization

Kathryn L. Schroeder, Pueblo West, Colorado, for Amicus Curiae Colorado Assessors' Association

Kristin Bronson, City Attorney, Charles T. Solomon, Assistant City Attorney, Paige A. Arrants, Assistant City Attorney, Denver, Colorado, for Amicus Curiae City and County of Denver Assessor and Board of Equalization

William G. Ressue, County Attorney, David P. Ayraud, Deputy County Attorney, Fort Collins, Colorado, for Amicus Curiae Larimer County Assessor

¶ 1     In Colorado, real property value for property tax assessment is calculated every two years.  The county assessor determines the "level of value" of a property, which takes effect on January 1 of odd-numbered years.  § 39-1-104(10.2)(d), C.R.S. 2021.  Typically, the property's level of value is carried over to the even-numbered year and can only be modified under three circumstances: (1) to correct a clerical error or omission; (2) to correct an incorrect value; or (3) to adjust for an unusual condition affecting the property. *Thibodeau v. Denver Cnty. Bd. of Comm'rs*, 2018 COA 124, ¶ 12; *24, Inc. v. Bd. of Equalization*, 800 P.2d 1366, 1368 (Colo. App. 1990).

¶ 2     The plaintiffs — fifty-five Weld County commercial property owners and taxpayers (the taxpayers) — filed this action in district court after exhausting their administrative remedies for protesting their 2020 property valuations.  In both the administrative and district court proceedings, the taxpayers alleged that two unusual conditions had occurred under section 39-1-104(11)(b)(I) (the unusual conditions statute), requiring the assessor to revalue their properties for the 2020 tax year: (1) the COVID-19 pandemic was a "detrimental act[] of nature," and (2) the various governmental

orders issued in response to the pandemic were "new regulations restricting . . . the use of their land."

¶ 3     The defendants — the Weld County Board of Equalization (BOE) and Weld County Assessor Brenda Dones (collectively, Weld County) — moved to dismiss the action under C.R.C.P. 12(b)(5). The district court granted the motion on the grounds that the taxpayers' claims were nonspecific and conclusory, and that, as a matter of law, the pandemic and resulting orders occurred too late to be considered for 2020 property valuations.

¶ 4     We reverse for two reasons.  First, as a matter of first impression, we conclude that, under section 39-1-104(11)(b)(I), the assessor is required to consider unusual conditions that occur at any point during the even-numbered calendar year[1] of the reassessment cycle, not just those that exist before January 1 of the even year.  Second, we conclude that the complaint was specific enough to survive a C.R.C.P. 12(b)(5) motion to dismiss.

---

[1] Weld County refers to the even year of the reassessment cycle as the intervening year.

2

## I.  Additional Background and Procedural History

¶ 5     In May 2020, after receiving their 2020 property valuations, the taxpayers sent a letter to Weld County's assessor requesting revaluation of their properties under the unusual conditions statute because of the COVID-19 pandemic and the resulting governmental orders.

¶ 6     The assessor denied the taxpayers' request and, in a letter to the taxpayers' counsel, said that the pandemic and resulting orders were not relevant to the 2020 property valuations because they occurred after January 1, 2020 — the assessment date for the 2020 tax year.  The assessor wrote that "any documented impact of the COVID-19 pandemic on property values will be taken into consideration for purposes of the 2021 biennial reappraisal."

¶ 7     The taxpayers then filed formal protests of the assessor's initial valuations.  The protest letter said that the taxpayers were

> protest[ing] and object[ing] to the failure of the assessor to decrease the value of the [their] propert[ies] for tax year 2020 due to [the] decrease in value as a result of the detrimental act of nature of the COVID-19 pandemic which has resulted in, among other detriments to the property, [c]ounty, [s]tate and federal regulations and [governmental] orders issued which severely limit taxpayers' and others'

3

access and use of the property, which revaluation of the property the assessor is required to perform in accordance with . . . section 39-1-104(11)(b)(I).

¶ 8    The assessor denied the protests on the grounds that the pandemic and orders occurred too late to be considered for 2020 tax purposes.  The taxpayers timely appealed the assessor's denials to the BOE.  After a hearing, the BOE denied the taxpayers' appeals.

¶ 9    Then the taxpayers filed suit in Weld County District Court. Weld County filed a motion to dismiss under C.R.C.P. 12(b)(5).  The district court, after finding that the "allegations in the complaint [were] purely conclusory," dismissed the taxpayers' claims without prejudice.

¶ 10    The taxpayers filed an amended complaint that, unlike the original complaint, identified the fifty-five taxpayers by name and their properties by legal address, parcel ID number, and county tax account number.  It also set forth each property's 2020 assessed value.  Attached to the complaint was a list of the pandemic-related governmental orders that the taxpayers alleged had devalued their properties.

¶ 11   In the amended complaint, the taxpayers sought three types of relief: (1) a writ of mandamus under C.R.C.P. 106(a)(2); (2) de novo review of the denials of their property assessment appeals under section 39-8-108(1), C.R.S. 2021; and (3) a declaratory judgment that the COVID-19 pandemic and resulting governmental orders were unusual conditions under section 39-1-104(11)(b)(I) that required the assessor to revalue the subject properties for the 2020 tax year.

¶ 12   Weld County again filed a Rule 12(b)(5) motion to dismiss.  It argued that the amended complaint lacked specificity and was conclusory, and that the taxpayers' claims failed as a matter of law because even if the pandemic and resulting governmental orders were unusual conditions, they could not be considered for the 2020 tax year because they occurred after January 1, 2020.

¶ 13   The district court granted Weld County's motion and dismissed the amended complaint with prejudice.  It did not address whether the pandemic itself was an unusual condition and concluded that the governmental orders were the only possibly relevant unusual condition.  It noted that the "[taxpayers] have not referred to any regulation that restricts (or increases) the *use of*

5

*land,* nor have they explained how any of the [governmental] orders, declarations, or guidance to which they make only a cursory reference to in the amended complaint has prevented them from using their land." So the court found that the amended complaint "still fail[ed] to state valid claims for relief because it [made] only bald assertions and relie[d] on conclusory allegations that [were] not supported by specific facts that would put the defendants on notice as to what 'regulation' affected each [taxpayer's] property and how." The court stated it was dismissing the amended complaint with prejudice "for these reasons, and for all the reasons raised in the defendants' motion."

## II. Analysis

¶ 14    This case is one of eleven nearly identical suits filed by commercial property owners in eleven counties.[2] In each case, the property owners — who are all represented by the same attorneys

---

[2] The eleven district court cases include the following, by county and case number: Adams County (20CV31565), Arapahoe County (20CV31729), Boulder County (20CV30996), City and County of Broomfield (20CV30366), City and County of Denver (20CV32946), Douglas County (20CV30909), Eagle County (20CV30186), El Paso County (20CV31533), Jefferson County (20CV31506), Larimer County (20CV30613), and this case, Weld County (20CV30593).

— seek to compel their respective county assessors to revalue their properties for the 2020 tax year. As of the date of this opinion, rulings from six of the eleven district court cases have been appealed and are pending in this court.[3] This case is the first one decided by a division of this court.

¶ 15    On appeal, the taxpayers contend the district court erred by ruling that (1) events that occurred after January 1, 2020, cannot be considered as unusual conditions for the 2020 tax year; (2) the complaint did not contain sufficient facts to support a plausible claim for relief; and (3) COVID-19 is not, as a matter of law, an unusual condition.

¶ 16    We start by stating the applicable standards of review and providing an overview of the property tax assessment statutory framework. Then we address the taxpayers' contentions in turn.

A.     Standard of Review and Legal Principles

¶ 17    Applying the same standards as the district court, we review the court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss de novo.

---

[3] Besides this case, the following cases are pending in our court, by county and case number: Broomfield County (22CA0695), Douglas County (21CA1253), Eagle County (21CA0985), Jefferson County (21CA1731), and Larimer County (21CA1191).

*Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. To survive dismissal for failure to state a claim under C.R.C.P. 12(b)(5), a complaint must plead sufficient facts that suggest plausible grounds to support a claim for relief. *Warne v. Hall,* 2016 CO 50, ¶ 24; *Froid v. Zacheis,* 2021 COA 74, ¶ 29.

¶ 18 On review, we must accept as true all factual allegations asserted in a complaint. *Norton,* ¶ 7. However, we are not required to accept as true bare legal conclusions. *Id.*

¶ 19 Motions to dismiss under C.R.C.P. 12(b)(5) are viewed with disfavor. *Begley v. Ireson,* 2017 COA 3, ¶ 7. Therefore, "[w]e will uphold the grant of a C.R.C.P. 12(b)(5) motion only when the plaintiff's factual allegations do not, as a matter of law, support the claim for relief." *Norton,* ¶ 7. "When considering a motion to dismiss for failure to state a claim, we may consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters proper for judicial notice." *Id.*

¶ 20 The interpretation of the property tax assessment statutes is a question of law that we also review de novo. *See Yen, LLC v. Jefferson Cnty. Bd. of Comm'rs,* 2021 COA 107, ¶ 10. In

interpreting statutes, our primary goal is to ascertain and effectuate the legislature's intent. *Lewis v. Taylor*, 2016 CO 48, ¶ 20. We start with the plain language of the statute. *People v. Johnson*, 2021 CO 79, ¶ 9. "Applying the plain meaning of the language requires us to 'give consistent effect to all parts of a statute, and construe each provision in harmony with the overall statutory design.'" *Lannie v. Bd. of Cnty. Comm'rs*, 2020 COA 77, ¶ 8 (quoting *Larrieu v. Best Buy Stores, L.P.*, 2013 CO 38, ¶ 12). "If the statutory language is unambiguous, we effectuate its plain and ordinary meaning and look no further." *Carrera v. People*, 2019 CO 83, ¶ 18.

¶ 21    The Colorado Constitution sets forth "[t]he basic framework for fair and uniform ad valorem taxation of real and personal property" in this state. *Gilpin Cnty. Bd. of Equalization v. Russell*, 941 P.2d 257, 260 (Colo. 1997). The constitution mandates that

> [t]he actual value of all real and personal property not exempt from taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of all real and personal property not exempt from taxation under this article.

Colo. Const. art. X, § 3(1)(a).

9

¶ 22    To effectuate this mandate, the legislature has enacted a comprehensive statutory framework. *Yen*, ¶ 15. Under this framework, county assessors are tasked with determining the actual value of real property in their counties and making the initial appraisal. *Russell*, 941 P.2d at 261; *see* Colo. Const. art. X, § 3(1)(a); §§ 39-1-103(5)(a), 39-5-104, C.R.S. 2021.

¶ 23    By statute, real and personal property must be assessed and valued biennially, or every two years. *Bachelor Gulch Operating Co. v. Bd. of Cnty. Comm'rs*, 2013 COA 46, ¶ 19; §§ 39-1-103(5)(a), 39-1-104(10.2)(a). On January 1 of odd-numbered years, the assessor assigns the level of value for each property. In reaching this determination, the assessor must consider, as appropriate, three different approaches to property appraisal: cost, market, and income.[4] *Bachelor Gulch*, ¶ 19; §§ 39-1-103(5)(a), 39-1-104(10.2)(a).

---

[4] "The cost approach values property by estimating the cost of replacing improvements to a property; the market approach values property by considering sales of comparable properties in the market; and the income approach considers the income stream a property is capable of generating, capitalized to value at a rate typical within the relevant market." *Kinder Morgan CO2 Co., L.P. v. Montezuma Cnty. Bd. of Comm'rs*, 2017 CO 72, ¶ 6 n.2.

¶ 24    A property's level of value is the actual value of the property "for the one-and-one-half-year period immediately prior to July 1 immediately preceding the assessment date." § 39-1-104(10.2)(d). Thus, for the 2019 assessment, the data-gathering period for determining the actual value of the taxpayers' properties was January 1, 2017, to June 30, 2018.

¶ 25    Under the statutory framework, the assessor "need not revaluate each property every year even though particular properties may have increased or decreased in value during a particular year." *LaDuke v. CF & I Steel Corp.*, 785 P.2d 605, 608 (Colo. 1990). Although their properties may have increased or decreased in value, taxpayers pay taxes on the basis of their properties' values at the end of the data-gathering period preceding the odd-numbered year in the reassessment cycle and not on the properties' current actual value. *Id.* When property values are rising during an economic upturn, this method benefits taxpayers. *Id.* When property values are falling, this method disadvantages taxpayers. *Id.*

¶ 26    Generally, this level of value is carried over to the even-numbered year. *Bachelor Gulch*, ¶ 19. However, there are

11

exceptions to this general framework. An assessor may decrease or increase a property's actual value "for the years which intervene between changes in the level of value" if certain "unusual conditions" exist. § 39-1-104(11)(b)(I); *Bachelor Gulch,* ¶ 20. Section 39-1-104(11)(b)(I) defines an "unusual condition" as

> the installation of an on-site improvement, the ending of the economic life of an improvement with only salvage value remaining, the addition to or remodeling of a structure, a change of use of the land, the creation of a condominium ownership of real property as recognized in the "Condominium Ownership Act", article 33 of title 38, C.R.S., any new regulations restricting or increasing the use of the land, or a combination thereof, the installation and operation of surface equipment relating to oil and gas wells on agricultural land, any detrimental acts of nature, and any damage due to accident, vandalism, fire, or explosion.

¶ 27     The circumstances that qualify as "unusual conditions" are restricted to those enumerated in the statute. *LaDuke*, 785 P.2d at 609. If an "unusual condition" exists, the assessor is required to revalue the property for the intervening tax year. *Bachelor Gulch,* ¶ 20; § 39-1-104(11)(b)(I).

¶ 28    The statutory framework provides a process for taxpayers to appeal the assessor's initial valuation.[5]  Under section 39-5-121(1)(a)(I), C.R.S. 2021, no later than May 1 each year, the assessor must mail a notice to every property owner setting forth the value of the property.  *Yen*, ¶ 15.  Before June 1, the property owner may submit a protest to the assessor's valuation.  *Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 202 (Colo. 2005); § 39-5-122(1)(a), C.R.S. 2021.  If the assessor denies the protest, the property owner may petition the county board of equalization, which holds a hearing on the petition.  *Sampson*, 105 P.3d at 202; §§ 39-8-106, 39-8-107(1), C.R.S. 2021.  If the board denies the petition, the property owner may appeal the board's decision to the district court for a de novo trial.  *Sampson*, 105 P.3d at 202; § 39-8-108(1).

---

[5] A taxpayer may also contest a property valuation under the abatement statute.  § 39-10-114, C.R.S. 2021; *Yen, LLC v. Jefferson Cnty. Bd. of Comm'rs*, 2021 COA 107, ¶ 16.  That provision is not at issue here.

## B. Unusual Conditions That Arose After January 1, 2020, are Relevant for the 2020 Tax Year

¶ 29    The taxpayers contend the court erred by adopting Weld County's position that the pandemic and orders were not relevant for the 2020 tax year because they occurred after January 1, 2020 — the assessment date for that tax year. We agree.

¶ 30    The unusual conditions statute states as follows:

> The provisions of subsection (10.2) of this section are not intended to prevent the assessor from taking into account, in determining actual value for the years which intervene between changes in the level of value, any unusual conditions in or related to any real property which would result in an increase or decrease in actual value. If any real property has not been assessed at its correct level of value, the assessor shall revalue such property for the intervening year so that the actual value of such property will be its correct level of value; however, the assessor shall not revalue such property above or below its correct level of value except as necessary to reflect the increase or decrease in actual value attributable to an unusual condition . . . . When taking into account such unusual conditions which would increase or decrease the actual value of a property, the assessor must relate such changes to the level of value as if the conditions had existed at that time.

§ 39-1-104(11)(b)(I).

¶ 31     The key interpretation question in this case involves the meaning of the phrase "years which intervene between changes in the level of value." The taxpayers contend that the assessor may revalue their properties for the 2020 tax assessment based on unusual conditions that occurred after the conclusion of the base period — June 30, 2018 — and at any point during the 2020 calendar year. Weld County contends that, because January 1, 2020, is the assessment date for the 2020 tax year, the assessor may only consider unusual conditions that occurred prior to that date. In support of their reasoning, Weld County and the amici curiae point to other provisions of the statutory scheme and the Assessors' Reference Library (ARL),[6] and advance various policy arguments about how their interpretation of the statute promotes stability and certainty in the valuation and taxation process. However, their interpretation has a fatal flaw: it isn't supported by the plain language of the statute.

---

[6] Under section 39-2-109(1)(e), C.R.S. 2021, the Property Tax Administrator prepares and publishes a land valuation manual, the Assessors' Reference Library (ARL), which assists county assessors in valuing land. *Jet Black, LLC v. Routt Cnty. Bd. of Cnty. Comm'rs*, 165 P.3d 744, 748-49 (Colo. App. 2006). The ARL's interpretation of a statute is binding on county assessors. *Id.* at 749.

15

¶ 32    The statutory framework expressly defines "level of value." "[L]evel of value" means the actual value of taxable real property as calculated during the one-and-a-half year period immediately prior to July 1 immediately preceding the odd-year assessment date. § 39-1-104(10.2)(d).  Absent any exceptions, that level of value is meant to be used for both years of the biennial assessment cycle. § 39-1-104(10.2)(a).  At the end of the biennial cycle, a new level of value is calculated and assessed on January 1 of the odd year.  For the time period in question here, the "level of value" was assessed on January 1, 2019, and was meant to carry over for the 2020 tax year.  Then, a new level of value was assessed on January 1, 2021.

¶ 33    The unusual conditions statute does not, however, expressly define the terms "years which intervene" or "intervening year."  Nor do other provisions within the statutory framework, the ARL, or the relevant case law define these terms.  Therefore, we look to their ordinary and usual meaning.  *See Roup v. Com. Rsch., LLC*, 2015 CO 38, ¶ 8 ("When a statute does not define a term, we assume that the General Assembly intended to give the term its usual and ordinary meaning.").

16

¶ 34     Applying the plain and ordinary meaning, we deduce that the phrase "years which intervene between changes in the level of value" means the time period between the dates when a new level of value for the biennial cycle was assessed for the taxpayers' properties: from January 1, 2019, to January 1, 2021.  Put another way, the "years which intervene" were the entire 2019 and 2020 calendar years.[7]

¶ 35     Importantly, the unusual conditions statute contains no language that imposes a cutoff date of January 1 of the even year or otherwise suggests that an "intervening year" does not span the entire calendar year.  If the legislature had intended to set a cutoff date, it could have done so.  *See Auman v. People*, 109 P.3d 647, 656 (Colo. 2005) ("Just as important as what the statute says is what the statute does not say.").  Because it didn't, we won't — as Weld County's interpretation would require us to do — read language into the statute that isn't there.  *See Oakwood Holdings,*

---

[7] Weld County asserts that there is an "intervening year" and a "reassessment year."  However, the General Assembly did away with that distinction when it inserted "years which intervene between changes in the level of value" into the statute.  *See* Ch. 267, sec. 4, § 39-1-104(11)(b)(I), 1988 Colo. Sess. Laws 1272.

17

*LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12 ("[W]e must respect the legislature's choice of language, and we do not add words to the statute or subtract words from it.").

¶ 36     Weld County contends that section 39-1-105, C.R.S. 2021, which provides that the yearly assessment date is January 1, supports its interpretation and, along with the amici, argues that the January 1 cutoff date is necessary to conform to the general procedure for protesting valuations. *See Sampson*, 105 P.3d at 202 (describing valuation protest process); §§ 39-5-122, 39-8-106, 39-8-108. However, by definition, the unusual conditions statute is an exception to the general framework. It requires the assessor to revalue property in an intervening year if, due to an unusual condition, the predetermined level of value does not reflect the actual value of the property. Therefore, the unusual conditions statute is not governed by the assessment date set forth in section 39-1-105.[8]

---

[8] This structure reinforces our interpretation of the unusual conditions statute as an exception to the normal assessment cycle. If the unusual conditions statute were governed by the assessment date, it would merely be restating the protest statute, which would render the unusual conditions statute superfluous. *See Kinder*

¶ 37 Weld County and the amici also highlight provisions in the ARL that support their interpretations of the statute. Although we defer to the ARL when the statute at issue is subject to different reasonable interpretations, we are not bound by it. *Bachelor Gulch,* ¶ 31. And we will not follow the interpretation if it is not supported by the language of the statute. *Kinder Morgan CO2 Co., L.P. v. Montezuma Cnty. Bd. of Comm'rs,* 2015 COA 72, ¶ 15, *aff'd,* 2017 CO 72.

¶ 38 In sum, because the phrase "years which intervene between changes in the level of value" includes the entire even-numbered calendar year between reassessment cycles, the taxpayers were not precluded by law from invoking the unusual circumstances statute in their protest of valuation based on events that arose during the spring of 2020. To the extent the court concluded otherwise by adopting the reasoning in Weld County's motion to dismiss, it erred.

---

*Morgan CO2,* ¶ 24 ("We strive to avoid statutory interpretations that render certain words or provisions superfluous or ineffective.").

19

## C. The Amended Complaint Alleged Plausible Claims for Relief

¶ 39     The taxpayers next contend that the court erred by concluding they did not plead sufficient facts to suggest a plausible claim for relief.  We agree.

### 1. Burden of Pleading and Proof

¶ 40     As a threshold matter, we address the taxpayers' burden of pleading, and eventual proof at trial, in the district court.  We address this issue because, although not dispositive, it will arise on remand.  *See People v. Stewart*, 2017 COA 99, ¶ 64 (J. Jones, J., concurring in part and dissenting in part) ("[O]ur common practice is to address contentions that pertain to issues likely to arise on remand.").

¶ 41     The taxpayers' second claim for relief sought de novo review of their property valuations.  § 39-8-108(1) ("If the county board of equalization . . . [denies a] petition[,] . . . the petitioner may appeal the valuation set by the assessor . . . to the district court of the county wherein the petitioner's property is located for a trial de novo . . . .").  The taxpayers contend that the court erred by implicitly finding that they needed to demonstrate a diminution in property value at the pleading stage and assert that they are not

required to allege how the pandemic or orders specifically affected the value of their individual properties. They contend that, to warrant revaluation of their properties by the assessor, they simply need to allege, and then prove, the existence of an unusual condition. We disagree.

¶ 42 An assessor's property valuation for taxation is presumed to be correct. *Lodge Props., Inc. v. Eagle Cnty. Bd. of Equalization*, 2022 CO 9, ¶ 25. To rebut that presumption in a trial de novo under section 38-8-108(1), taxpayers who challenge a property assessment bear the burden of proving, by a preponderance of the evidence, that the valuation is incorrect. *Id.*; *see A.B. Hirschfeld Press, Inc. v. City & Cnty. of Denver*, 806 P.2d 917, 920 (Colo. 1991) (stating that "[a] party challenging a tax assessment assumes the burden of establishing the invalidity of the assessment" in a case involving judicial review of a hearing officer's decision under C.R.C.P. 106(4)(a)).

¶ 43 The taxpayers' theory in this case is that Weld County's valuations were incorrect because the assessor failed to consider the unusual conditions caused by the pandemic and orders. The assessor is required to revalue a property when "any unusual

conditions in or related to any real property which would result in an increase or decrease in actual value" occurs. § 39-1-104(11)(b)(I). Thus, to establish the assessments were incorrect, the taxpayers must plead, and later prove, (1) the pandemic or orders constituted an unusual condition, and (2) the unusual condition would affect the value of their properties. This expressly requires the taxpayers to show *how* the unusual conditions affected the value of their specific properties. The taxpayers are not, however, required to plead or prove an alternative valuation. *Sampson*, 105 P.3d at 202.

### 2. Claim for Relief for Diminution of Value

¶ 44 The taxpayers next contend that the court misapplied the *Warne* pleading standard. We agree. Accepting the taxpayers' factual allegations as true, the amended complaint contains sufficient facts and is specific enough to support a plausible claim for relief. *See Patterson v. James*, 2018 COA 173, ¶ 23. Therefore, the court erred by granting Weld County's C.R.C.P. 12(b)(5) motion.

¶ 45 We agree with the district court that the taxpayers' amended complaint contains many bald assertions and conclusory allegations that are not supported by specific facts. It is not a

22

paragon of clarity. However, we conclude that the amended complaint alleges sufficient facts to put Weld County on notice of the claims against it.

¶ 46 The amended complaint identifies the individual taxpayers and their properties. For each property, the amended complaint identifies the actual value that the BOE assigned for the 2020 tax year. The attachments to the amended complaint also identify the reduced values that the taxpayers claim were the correct values for their properties.

¶ 47 The amended complaint then describes what the taxpayers asserted was the source of the unusual conditions: the pandemic and orders that affected the use of and access to the taxpayers' commercial properties and land. One of the exhibits to the amended complaint describes terms contained in one set of the challenged orders that could impact commercial properties. The other two exhibits summarizing the governmental orders do not.

¶ 48 The amended complaint groups the taxpayers into categories based on type of business. For example, Kersey Hotel LLC, Willco IV Development LLLP, and Willco VIII Development LLLP are identified as "hotel motel." It also identifies how the groups of

taxpayers allege the unusual conditions affected them.  For hotels and motels, the amended complaint alleges that

> [a]s a result of the existence of the COVID-19 virus, including its infectiousness and overall threat to health and safety and the various stay-at-home orders, reduced occupancy orders, and travel restrictions, occupancy/rental rates at the hotel and motel Petitioners dropped substantially since March 2020 to date.  Occupancy rates bear direct correlation to operating income of hotels and motels which bears a direct relationship to ad valorem valuation for such properties.  Such reduced occupancy rates have caused a diminution in the value of such Petitioners' properties the exact amount of which would be determined by the Assessor's revaluation or by the trier of fact.

¶ 49    We cannot say this does not state a plausible claim for relief. The taxpayers' overall theory is that they were entitled to revaluation of their properties for the 2020 tax year because the pandemic and related orders constituted unusual conditions that affected the value of their properties.  The amended complaint and attachments identify the taxpayers in groups and describe, for each group, how the virus and the orders resulted in lower income, affecting one of the approaches to valuation, and suppressed sales, affecting another.  It's true that the amended complaint did not

24

describe how the individual properties were affected by specific orders, which the taxpayers will need to do to prevail in the district court. However, the amended complaint is sufficient to survive the significantly lower standard that applies to C.R.C.P. 12(b)(5) motions.

### 3. Claim for Relief for Improper Application of Unusual Circumstances Statute

¶ 50 As the taxpayers note, the primary basis for their claim is not the diminution of value described above — that was their alternative ground. The primary claim in the amended complaint is that Weld County did not comply with the unusual conditions statute. After describing the course of their administrative appeals, the taxpayers pleaded that Weld County "denied all of [their] appeals, solely on the basis that unusual conditions occurring after January 1, 2020[,] cannot be taken into account and therefore [Weld County] has no duty to revalue [their] properties."

¶ 51 In support, the taxpayers attach their appeal letter and the response from Weld County. The response indicates that Weld County denied the bulk of the appeals with the following identified reason:

CV19 - The COVID-19 pandemic occurred after the appraisal date of June 30, 2018, and after the assessment date of January 1, 2020. Therefore, it cannot be considered for the 2020 property valuation.

¶ 52    The taxpayers then frame the dispute in their amended complaint as follows:

A dispute exists between all [plaintiffs] and respondent [Weld County] in that

a) the respondent Assessor refuses to revalue [taxpayers'] properties taking into account the unusual conditions of the COVID-19 pandemic and the governmental orders and regulations resulting therefrom as a result of the pandemic.  Respondent Assessor erroneously concludes that the unusual condition statute cannot be triggered or be operative for the 2020 tax year for any unusual condition unless any such enumerated conditions existed on or before the January 1, 2020 assessment date . . . .

¶ 53    The taxpayers clarify that they are not "seek[ing] to establish or for the Court to find a particular valuation for their properties." Instead, they are asking the court to compel Weld County to apply the unusual conditions statute.

¶ 54    In our view, these factual allegations also state a plausible claim for relief.  The taxpayers allege that Weld County improperly denied their requests for revaluation under the unusual conditions

26

statute based on the unusual conditions themselves falling after the assessment date for the year. They ask the court to resolve that legal question and to compel Weld County to apply the statute despite the dates.

¶ 55 As we note above, the unusual conditions statute is not restricted to events occurring before the assessment date. We therefore conclude that the taxpayers stated a plausible claim for relief based on Weld County denying their protests on that ground.

¶ 56 We also note that we express no opinion on the factual viability of these claims. Determining whether the pandemic was a detrimental act of nature and the orders were regulations restricting the use of land within the meaning of the unusual conditions statute requires further proceedings. However, we conclude that the amended complaint contains sufficient factual allegations to plead a plausible claim for relief.

### D. Whether COVID-19 is an Unusual Condition

¶ 57 The taxpayers contend that the district court erroneously ruled that COVID-19 was not a detrimental act of nature when it stated, "Section 39-1-104(11)(b)(I) provides an *exclusive* list of conditions that qualify as 'unusual conditions . . . .' The only

unusual condition listed in the statute that has relevance here is 'any new regulation[] restricting or increasing the use of the land.'"

¶ 58    We're not persuaded that such statement constitutes a ruling or legal conclusion.  Instead, when viewed in context, it merely introduces the next sentence, which addresses the specificity of the complaint.  And it would have been improper for the court to reach such a conclusion because Weld County did not argue in its motion to dismiss that COVID-19 was not, as a matter of law, a detrimental act of nature.

¶ 59    On the record before us, we cannot say, as a matter of law, whether the pandemic is an unusual condition requiring revaluation of the taxpayers' properties.  That question is best answered after further proceedings to develop the record.

¶ 60    Nor can we say, on this record, whether the orders were, as a matter of law, "new regulations restricting or increasing the use of the land" under section 39-1-104(11)(b)(I).  That question also requires additional factual development beyond what is alleged in the complaint.

### III. Conclusion

¶ 61    We reverse the judgment and remand for the district court to reinstate the amended complaint and to conduct further proceedings consistent with this opinion.

JUDGE NAVARRO and JUDGE LIPINSKY concur.